420 S.E.2d 466 (1992)
107 N.C. App. 462
John G. BASHFORD, Petitioner
v.
NORTH CAROLINA LICENSING BOARD FOR GENERAL CONTRACTORS, Respondent.
No. 9110SC656.
Court of Appeals of North Carolina.
September 15, 1992.
*467 Shipman & Lea, by Gary K. Shipman, Wilmington, for petitioner.
Bailey & Dixon, by Carson Carmichael, III and Rodney B. Davis, Raleigh, for respondent-appellee.
Bailey & Dixon, by Carson Carmichael, III and Ann L. Johnston, Raleigh, for respondent-cross appellant.
LEWIS, Judge.
Petitioner-Bashford is a general contractor who contracted with the Parkers to build a house in Raleigh utilizing a set of plans prepared by an independent design firm. Petitioner had never performed the type of masonry work required by the plans. According to the North Carolina State Building Code (Code), masonry must be supported by either steel, concrete, or masonry. Petitioner took the plans, which specified steel, to North Carolina Steel (NCS) to have the appropriate steel angle fashioned to support the nonstructural masonry veneer on the gable over the garage. The angle NCS proffered was thicker than the Code mandated, but it permitted only one lag screw per stud rather than the Code's required two per stud. Unable to insert two lag screws per stud, the framing contractor used an alternative method called "per-line blocking" to install the angle. This method entailed laying steel on the roof and blocking "down the rafters on the roof and fasten[ing] the lag bolts into the blocking, as opposed to the studs."
On 8 July 1987, a Raleigh City Building Inspector inspected the frame work and the steel angle installation. Petitioner testified that the steel angle was inspected prior to being covered by the brick veneer and that it passed inspection. A certificate of occupancy was issued and the Parkers moved into the house under a rental agreement at the end of August 1987. The Parkers refused to close upon the house until petitioner completed the work on their punch list. After the submission of several punch lists, a closing date was set for 7 October 1987. Upon failure to complete certain finish work, the Parkers filed suit against petitioner and again refused to close on the house.
The Parkers submitted multiple complaints to the Raleigh City Building Inspector's office. When that office's efforts failed to yield relief, the Parkers filed a complaint against the Raleigh Inspector's Office with the state. As a result, a code consultant for the North Carolina Department of Insurance inspected the Parkers' residence on 8 September 1988 and determined that "the steel angle and the masonry above are probably supported on the wood roof structure" which is in violation of the Code. By consent order filed 14 November 1988, the Parkers agreed to purchase the house for the contract price of $162,000.00 plus interest from 29 August 1987. The Parkers and Bashford agreed to "waive, release and quitclaim any and all claims that may presently exist between them concerning the house and real property in question and their relationship concerning said property." Closing took place on 28 November 1988.
On 5 May 1989, the North Carolina Licensing Board for General Contractors (Board) issued a Notice of Hearing which alleged that petitioner was grossly negligent, incompetent or had committed misconduct in the practice of general contracting pursuant to N.C.G.S. § 87-11(a), by constructing a residence for the Parkers which did not properly support the brick veneer on the gable over the garage. The evidence presented at the hearing tended to show that the steel angle support did not meet Code. Several witnesses testified that there was no evidence of structural failure in the area of the support. A Code consultant gave his opinion that despite the lack of visible damage, the support was unsafe. A structural engineer for the North Carolina Department of Transportation testified that the brick veneer was adequately supported. The final decision, *468 issued 7 July 1989, found petitioner to be grossly negligent for violating the Code with regard to the steel angle masonry support. The Board suspended petitioner's general contractor's license for six months to begin upon completion of contracts in hand. The imposition of this sanction was itself suspended and petitioner was placed on probation for one year on the condition that he fix the defects in the Parkers' house.
Petitioner appealed the final agency decision to the Wake County Superior Court pursuant to N.C.G.S. § 150B-45. The trial court found that the provisions of the settlement of the Parkers' suit against petitioner precluded the Board from conditioning a suspension of sanctions upon completion of remedial work upon the Parkers' residence. By judgment signed 14 February 1990, the trial court affirmed the Board's finding petitioner grossly negligent, but reversed and remanded on the issue of sanctions. The trial court remanded the case to the Board for the "imposition of appropriate sanctions not to exceed a six-months active suspension of petitioner's license." Both parties appealed to this Court; the appeal and cross appeal were dismissed. Upon remand, the Board issued a final decision, 10 December 1990, in which it suspended petitioner's license for six months and placed him on probation for six months following the suspension. By consent order the trial court affirmed the final agency decision. By appeal and cross appeal both parties seek review in this Court.
Petitioner appeals the suspension of his general contractor's license arguing that he was not grossly negligent. The Board appeals the trial court's judgment signed 14 February 1990. The Board argued that the settlement of the suit between the Parkers and petitioner did not preclude the Board's ability to condition the suspension of an active sanction on the completion of remedial work on the Parker's residence. Because we find for petitioner on the issue of gross negligence, it necessarily follows that the question of sanctions are no longer an issue to be decided in this case. Therefore, the only issue to be discussed will be that of whether there is sufficient evidence to find petitioner grossly negligent in the practice of general contracting.
First, we address the appropriate standard of review. Petitioner argues for a de novo review, while the Board argues for a "whole record" review. The Board is an agency subject to the Administrative Procedures Act, Chapter 150B. According to N.C.G.S. § 150B-51(b) the review of a final agency decision is a "whole record test." In re Appeal of K-Mart Corp., 319 N.C. 378, 380, 354 S.E.2d 468, 469 (1987). The reviewing court is "bound by the findings of the [agency] if they are supported by competent, material, and substantial evidence in view of the entire record as submitted." Id. (citation omitted). However:
[w]hen the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ de novo review. (Citations omitted). Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding.
Savings and Loan League v. Credit Union Comm., 302 N.C. 458, 465, 276 S.E.2d 404, 409-10 (1981).
Essentially, the propriety of the Board's action turns upon the meaning accorded the term "gross negligence" in the governing statute N.C.G.S. § 87-11(a). The statute provides
The Board shall have the power to revoke the certificate of license of any general contractor licensed hereunder who is found guilty of any fraud or deceit in obtaining a license, or gross negligence, incompetency or misconduct in the practice of his profession, or willful violation of any provisions of this Article....
N.C.G.S. § 87-11(a) (emphasis added). We note that "gross negligence" is not defined within N.C.G.S. § 87-11. Though violations of the building code have been held to constitute "negligence per se," Sullivan v. Smith, 56 N.C.App. 525, 527, 289 *469 S.E.2d 870, 871, disc. rev. denied, 306 N.C. 392, 294 S.E.2d 220 (1982) (citations omitted), case law does not address the circumstances necessary to elevate mere negligence, within the administrative decisionmaking process, to that of gross negligence. Further, the Board, which is required to "adopt and publish guidelines,..., governing the suspension and revocation of licenses" has not presented evidence to show that it has defined gross negligence. N.C.G.S. § 87-11(b).
The Board argues that the courts should defer to it and permit it to define gross negligence. According to the Board "what constitutes gross negligence in this context is essentially a fact-finding process calling for application of the Board's expertise." Petitioner argues that we should utilize statutory interpretation to define the term gross negligence in N.C.G.S. § 87-11. Petitioner urges this Court to engraft upon the statute at issue the common law definition of gross negligence, as developed in tort law.
We find petitioner's argument persuasive. Statutes should be interpreted according to the "common law as it was understood at the time of the enactment of the statute." In re Banks, 295 N.C. 236, 240, 244 S.E.2d 386, 389 (1978) (citation omitted). In Cole v. Duke Power Co., 81 N.C.App. 213, 344 S.E.2d 130, disc. rev. denied, 318 N.C. 281, 347 S.E.2d 462 (1986) another panel of this Court affirmed the following jury instruction as a correct statement of the law:
Ordinary negligence is the lack of reasonable care. Gross negligence is an extreme departure from the ordinary standard of conduct. It is very great danger. It is negligence materially greater than ordinary negligence. The difference is one of degree.
Gross negligence is negligence of an aggravated character and a gross failure to exercise reasonable care.
The term implies a thoughtless disregard of consequences without exerting any effort to avoid it.
Gross negligence means a greater absence of reasonable care than is implied by the term, ordinary negligence.
Id. 81 N.C.App. at 219, 344 S.E.2d at 133-34 (emphasis original). The Board puts forth the definition of gross negligence found in Bullins v. Schmidt, 322 N.C. 580, 369 S.E.2d 601 (1988): "wanton conduct done with conscious or reckless disregard for the rights and safety of others." Id. at 583, 369 S.E.2d at 603 (citations omitted).
The Board argues that petitioner was grossly negligent because his installation of the steel angle support, despite its violation of the Code, demonstrated a disregard for the safety of others. We disagree. From the above, it appears that more than a violation of the building code is required to reach the somewhat elevated level of gross negligence. The Board's findings of fact and our review of the record reveal only a violation of the Code. There is no evidence of a wanton disregard for the safety of others or a thoughtless disregard for the consequences of his actions nor any indication of danger to persons or property. Without such evidence of gross negligence, the Board's decision is reversed.
The portion of the trial court order which affirmed the Board's finding petitioner grossly negligent is reversed. The portion of the trial court order which remanded the case for imposition of alternative sanctions is vacated.
Reversed in part and vacated in part.
WYNN and WALKER, JJ., concur.