**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA ex rel.
JON H. OBERG,

      *Plaintiff-Appellant,*

      v.

KENTUCKY HIGHER EDUCATION
STUDENT LOAN CORPORATION;
PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY; VERMONT
STUDENT ASSISTANCE CORPORATION;
ARKANSAS STUDENT LOAN
AUTHORITY,

      *Defendants-Appellees,*

      and

NELNET, INC.; SLM CORPORATION;
PANHANDLE PLAINS HIGHER
EDUCATION AUTHORITY; EDUCATION
LOANS INC/SD; SOUTHWEST
STUDENT SERVICES CORPORATION;
BRAZOS HIGHER EDUCATION SERVICE
CORPORATION; BRAZOS HIGHER
EDUCATION AUTHORITY, INC.;
NELNET EDUCATION LOAN FUNDING,
INC.; PANHANDLE-PLAINS
MANAGEMENT AND SERVICING
CORPORATION; STUDENT LOAN
FINANCE CORPORATION; BRAZOS
GROUP,

      *Defendants.*

No. 10-2320

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
John F. Anderson, Magistrate Judge.
(1:07-cv-00960-JFA)

Argued: May 17, 2012

Decided: June 18, 2012

Before TRAXLER, Chief Judge, and MOTZ and KEENAN,
Circuit Judges.

———————————

Vacated and remanded by published opinion. Judge Motz
wrote the opinion, in which Chief Judge Traxler and Judge
Keenan joined.

———————————

## COUNSEL

**ARGUED:** Bert Walter Rein, WILEY REIN, LLP, Washington, D.C., for Appellant. Daniel B. Huyett, STEVENS & LEE, Reading, Pennsylvania; Thomas Leo Appler, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, McLean, Virginia; John Stone West, TROUTMAN SANDERS, LLP, Richmond, Virginia; N. Thomas Connally, III, HOGAN LOVELLS US LLP, McLean, Virginia, for Appellees. **ON BRIEF:** Michael L. Sturm, Christopher M. Mills, Brendan J. Morrissey, WILEY REIN, LLP, Washington, D.C., for Appellant. Rocklan W. King III, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, McLean, Virginia, for Appellee Kentucky Higher Education Student Loan Corporation; Mark E. Nagle, TROUTMAN SANDERS LLP, Washington, D.C., Megan C. Rahman, TROUTMAN SANDERS, LLP, Richmond, Virginia, for Appellee Vermont Student Assistance Corporation; Thomas M. Trucksess, HOGAN

LOVELLS US LLP, McLean, Virginia, Dustin McDaniel, Arkansas Attorney General, Dennis R. Hansen, Deputy Attorney General, Mark N. Ohrenberger, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Little Rock, Arkansas, for Appellee Arkansas Student Loan Authority; Craig A. Hirneisen, STEVENS & LEE, Reading, Pennsylvania, Neil C. Schur, STEVENS & LEE, PC, Philadelphia, Pennsylvania, Jill M. Dennis, HUNTON & WILLIAMS LLP, McLean, Virginia, Joseph P. Esposito, HUNTON & WILLIAMS LLP, Washington, D.C., Jason L. Swartley, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Harrisburg, Pennsylvania, for Appellee Pennsylvania Higher Education Assistance Agency.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this False Claims Act case, relator Dr. Jon Oberg, on behalf of the United States, brought a *qui tam* action alleging that appellees—corporations organized by four states, Kentucky, Pennsylvania, Vermont, and Arkansas—defrauded the United States Department of Education. The district court granted appellees' motions to dismiss on the ground that they were "state agencies" and therefore not subject to suit under the False Claims Act as interpreted in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 787-88 (2000). For the reasons that follow, we vacate and remand for further proceedings consistent with this opinion.

I.

On behalf of the United States, Dr. Oberg sued the Kentucky Higher Education Student Loan Corporation, Pennsylvania Higher Education Assistance Agency, Vermont Student Assistance Corporation, and Arkansas Student Loan Author-

ity (collectively "appellees"), as well as other defendants not parties to this appeal, under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* Appellees are corporate entities created by their respective states to improve the availability of higher educational opportunities by financing, making, and/or guaranteeing student loans. Each appellee operates with varying degrees of control by and support from its respective sponsoring state.

In his complaint, Dr. Oberg asserts that appellees knowingly made fraudulent claims to the United States Department of Education by engaging in various non-economic transactions to inflate their loan portfolios eligible for Special Allowance Payments ("SAP"), a federal student loan interest subsidy. As a result, according to Dr. Oberg, the Department of Education overpaid millions of dollars of SAP to appellees.

Each appellee moved to dismiss Dr. Oberg's complaint contending that it was a "state agency" and thus, under *Stevens*, 529 U.S. at 787-88, was not a "person" that could be sued under the FCA. The district court agreed and dismissed Dr. Oberg's complaint with regard to all four appellees. In so holding, the court did not apply any stated legal test. Instead, the court primarily looked to state statutory provisions, which, in its view, demonstrated each entity's status as a "state agency."

Dr. Oberg noted a timely appeal. We review de novo a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009).

## II.

This appeal presents the question of whether each of the appellees—various state-created corporate entities intended to facilitate the issuance of student loans—constitutes a "person" subject to liability under the FCA. The FCA provides a cause

of action against "any person" who undertakes certain fraudulent behavior, including "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" to an officer, employee, or agent of the United States. 31 U.S.C. § 3729(a)(1)(A). The relevant provisions of the FCA do not define the term "person." The Supreme Court, however, has provided helpful guidance on this question.

In *Stevens*, the Court held that "the False Claims Act does not subject a State (or state agency) to liability." 529 U.S. at 787-88. To arrive at this conclusion, the Court applied the "longstanding interpretive presumption that 'person' does not include the sovereign." *Id.* at 780. The Court reasoned that the "various features of the FCA . . . far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability, indicate quite the contrary." *Id.* at 787. Accordingly, the Court concluded that the Vermont Agency of Natural Resources, a state agency, could not be sued under the FCA.

In explaining its holding, the *Stevens* Court also noted that "the presumption with regard to corporations is just the opposite of the one governing here," *i.e.*, corporations "are presumptively *covered* by the term 'person.'" *Id.* at 782. Three years later, in *Cook County v. United States ex rel. Chandler*, the Court applied this presumption to a municipal corporation. 538 U.S. 119 (2003). There, the Court expressly held that, unlike states and state agencies, municipal corporations are "persons" subject to *qui tam* suits under the FCA. *Id.* at 125. The *Chandler* Court noted, as it had in *Stevens*, that the term "person" historically extended to municipal and private corporations. *Id.* at 125-26. The Court explained that, at the time of the FCA's enactment, "municipal corporations and private ones were simply two species of 'body politic and corporate,' treated alike in terms of their legal status as persons capable of suing and being sued." *Id.* at 126. As a result, the Court held that Cook County, as a municipal corporation, was a "person" subject to suit under the FCA.

From these two cases, the parties arrive at very different conclusions about how to determine whether each appellee is a proper FCA defendant. Relying heavily on *Chandler*, Dr. Oberg initially argues that any corporation, regardless of its association with a state, is "a legal personality independent of 'the State'" and so presumptively a "person" for purposes of the FCA. Appellant's Br. at 24-25. Because each appellee is a corporation, Dr. Oberg maintains that each is a proper FCA defendant. Such a broad rule—rendering every corporation, no matter how close its relationship to a state, a "person" for FCA purposes—appears inconsistent with *Stevens*' express holding that the term "person" in the FCA does *not* include any state or state agency. 529 U.S. at 787-88.

For their part, appellees contend that, under *Stevens*, they are not proper FCA defendants because they are state agencies, treated as such by their respective state legislative and judicial branches. Appellees maintain that *Chandler* "concluded only that local governments, unlike States and State agencies, are persons under the FCA" and because they are not local government entities, *Chandler* does not apply to them. Appellees' Br. at 7. But nothing in *Stevens* suggests that the fact that a state legislature or a state court labels a corporation a state agency immunizes that corporation from suit under the FCA. Nor is *Chandler* as narrow as appellees suggest. Although a municipal corporation was sued there, the Court's discussion of the personhood of corporations makes clear the historical significance of corporate status. *See Chandler*, 538 U.S. at 125-26.

Thus, at least initially, each side attempts to over-simplify the question at hand. To determine if appellees are subject to suit under the FCA, the critical inquiry is neither whether they are corporations with "independent legal personalities" (a phrase that appears nowhere in *Stevens* or *Chandler*), as Dr. Oberg maintains, nor whether they have been denominated "state agencies" by legislatures or courts, as appellees appear to contend. Rather the critical inquiry is whether appellees are

truly subject to sufficient state control to render them a part of the state, and not a "person," for FCA purposes. Accordingly, we turn to that inquiry.

### III.

Several of our sister circuits have recognized that the arm-of-the-state analysis used in the Eleventh Amendment context provides the appropriate legal framework for this inquiry. *See, e.g.*, *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1121-22 (9th Cir. 2007); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 718 (10th Cir. 2006); *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 401-02 (5th Cir. 2004).[1]

This is so because, although the question of whether an entity is a proper FCA defendant is one of statutory rather than constitutional interpretation, there is a "virtual coincidence of scope" between the statutory inquiry under the FCA and the Eleventh Amendment sovereign immunity inquiry. *Stevens*, 529 U.S. at 780; *see also Stoner*, 502 F.3d at 1121 (recognizing that the *Stevens* analysis "was driven by canons of statutory construction relating to protection of the state's sovereign immunity"). Indeed, "*Stevens* teaches that. . . Eleventh Amendment case law should guide our determination of whether an entity is a state agency and thus not a 'person' for purposes of [the FCA]." *Stoner*, 502 F.3d at 1121. Hence, a court should employ the Eleventh Amendment arm-of-the-state analysis in determining if an entity is properly regarded

---

[1]We have used the arm-of-the-state analysis in other contexts, like diversity cases, *see, e.g.*, *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300 (4th Cir. 2008), but have not previously had occasion to consider whether it is appropriate in the FCA context. Accordingly, that the district court did not use this analysis in its consideration of the parties' arguments is unsurprising.

as the state or an agency of the state and so not subject to suit under the FCA.[2]

In applying the arm-of-the-state analysis, we consider four nonexclusive factors:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;

> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;

> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and

> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*Hoover Universal*, 535 F.3d at 303 (internal quotation marks

---

[2]Each party makes an alternative argument that, if the arm-of-the-state analysis applies, it prevails. Appellees, however, also suggest that the application of this analysis might produce results incompatible with the *Chandler* holding that local governments are "persons" under the FCA, citing district court cases holding local government units entitled to sovereign immunity. Appellees' Br. at 36. We think this concern is unfounded. We have confidence in the ability of the district courts to apply *Chandler* appropriately to local governments, especially given that the Eleventh Amendment itself also distinguishes between states and municipal corporations. *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

and alterations omitted); *see Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001); *Ram Ditta v. Md Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456, 457-59 (4th Cir. 1987).[3] These factors endeavor to draw the line between "a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego." *Hoover Universal*, 535 F.3d at 303.

The same questions must be considered here in order to determine if any of the appellees is properly subject to liability under the FCA. If an appellee functions as an arm of the state, *Stevens* dictates that it is not a "person" under the FCA and, therefore, not subject to FCA liability. If, on the other hand, an appellee functions independently of the state, it is subject to suit under the FCA.[4]

Because the district court did not employ this arm-of-the-state analysis in determining whether each of the appellees is a state agency subject to suit under the FCA, we vacate its judgment and remand the case for the court to apply this analysis in the first instance.

*VACATED AND REMANDED*

---

[3]We note that although in the past we have referred to the first factor as "the most important consideration," *Ram Ditta*, 822 F.2d at 457, more recent Supreme Court precedent suggests that the first factor does not deserve such preeminence, *see, e.g., Fed. Maritime Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 765 (2002).

[4]We leave it to the discretion of the district court to determine whether some discovery is necessary to resolve this question with respect to one or more of the appellees.