IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-688

 Filed: 3 December 2019

Wake County, No. 16CVS5628

STATE OF NORTH CAROLINA, ex rel. ROY COOPER, Attorney General, Plaintiff,

 v.

KINSTON CHARTER ACADEMY, a North Carolina non-profit corporation; OZIE L.
HALL, JR., individually and as Chief Executive Officer of Kinston Charter Academy;
and DEMYRA MCDONALD HALL, individually and as Board Chair of Kinston
Charter Academy, Defendants.

 Appeal by defendants Kinston Charter Academy and Ozie L. Hall, Jr. from

orders entered 21 March 2018 by Judge A. Graham Shirley in Wake County Superior

Court. Heard in the Court of Appeals 16 January 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Matthew L.
 Liles, for the State.

 Ozie L. Hall, Jr., pro se, defendant-appellant.

 Ragsdale Liggett PLLC, by Mary M. Webb, Edward E. Coleman, III, and Amie
 C. Sivon, for defendant-appellant Kinston Charter Academy.

 BERGER, Judge.

 Plaintiff filed an action against Defendants Kinston Charter Academy

(“Kinston Charter”) and Ozie L. Hall (“Hall”) for, among other things, violations of

North Carolina’s False Claims Act. On March 21, 2018, the trial court denied motions

to dismiss filed by Kinston Charter and Hall (collectively, “Appellants”). Appellants

now appeal the interlocutory orders denying their respective motions to dismiss. In
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

addition, Appellants have filed petitions for writs of certiorari seeking review of the

sufficiency of the State’s pleadings under Rule 9 of the North Carolina Rules of Civil

Procedure. For the reasons discussed below, we reverse the trial court’s order

denying dismissal for Kinston Charter, affirm the trial court’s order denying

dismissal for Hall, and deny Appellants’ petitions for certiorari review.

 Factual and Procedural Background

 Kinston Charter is a non-profit corporation located in Kinston, North Carolina.

From January 2004 to September 2013, Kinston Charter operated a public school

pursuant to a charter from the North Carolina State Board of Education as provided

for by Section 115C-238.29 of the North Carolina General Statutes.1 Hall served as

Kinston Charter’s CEO from 2007 until 2013. Demyra McDonald-Hall served as the

chairwoman of Kinston Charter’s board of directors for roughly the same period of

time.

 In North Carolina, charter schools receive operating funds from the State on a

per pupil basis. In the spring of each year, a charter school is required to provide an

estimate to the Department of Public Instruction (“DPI”) of its anticipated average

daily membership (“ADM”) for the upcoming school year. This estimate is determined

by the school’s current ADM plus or minus any estimated losses or increases in the

student population for the upcoming year (“Estimated ADM”). During the time

 1At the relevant time herein, North Carolina charter schools were governed by Section 115C-
238.29. Effective September 23, 2015, charter school governance was recodified at Section 115C-218.

 -2-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

period relevant to this case, charter schools were permitted to submit estimated

growth in student enrollment of up to twenty percent in their Estimated ADM

without prior approval from the State; an increase of more than twenty percent in

any given year required approval from the State Board of Education.2 N.C. Gen. Stat.

§ 115C-238.29D(f)(1) (2013).

 After the school year begins, charter schools must provide an average total

enrollment from the first and twentieth days of the school year (“Actual ADM”). If

the Estimated ADM does not align with the Actual ADM, the charter school’s funding

allotment is adjusted to recapture the excess funds paid to the charter school at the

beginning of the school year based on its Estimated ADM.

 On April 26, 2013, Hall reported to DPI an estimated enrollment for Kinston

Charter of 366 students for the 2013-2014 school year. This estimate was within the

statutory twenty percent growth range and did not require prior approval from the

State Board of Education. However, when Kinston Charter opened for the 2013-2014

school year, the school only had 189 students in attendance—177 students less than

the estimate provided by Hall, despite efforts by the school to advertise and attract

additional students.

 2 As of 2017, a charter school not identified as “low-performing” may now provide an Estimated
ADM of up to thirty percent higher than its current ADM without seeking prior approval from the
State Board of Education. N.C. Gen. Stat. § 115C-218.7(b) (2017).

 -3-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 On September 4, 2013, Kinston Charter surrendered its charter to the State

Board of Education. Due to the timing of the surrender, excess operating funds

provided to Kinston Charter as a result of the difference between the school’s

Estimated ADM and Actual ADM were not recaptured by the State.

 On April 26, 2016, the State of North Carolina, by and through then-Attorney

General Roy Cooper, initiated this action against Kinston Charter, Hall, and

McDonald-Hall. The complaint alleged violations of the North Carolina False Claims

Act (“NCFCA”), Chapter 55A of the North Carolina General Statutes (“Chapter 55A”),

and the Unfair and Deceptive Trade Practices Act (“UDTPA”). Pursuant to Rule 2.1

of the General Rules of Practice for Superior and District Courts, the case was

designated “exceptional.”

 On July 3, 2017, the trial court heard arguments on Hall and McDonald-Hall’s

motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil

Procedure. On August 9, 2017, the trial court granted dismissal of the Chapter 55A

and UDTPA claims against Hall in his individual capacity and denied dismissal of

the NCFCA claim. The court granted dismissal of all claims against McDonald-Hall

in her individual capacity.

 On March 19, 2018, the trial court heard Kinston Charter’s motion to dismiss

pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6). The trial court also heard

arguments on Hall and McDonald-Hall’s 12(b)(6) motions to dismiss all charges

 -4-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

against them in their official capacities. Additionally, the trial court heard

arguments on Hall’s 12(b)(1) motion to dismiss the NCFCA claim against him in his

individual capacity.

 On March 21, 2018, the court granted dismissal of the Chapter 55A and

UDTPA claims against Kinston Charter and denied dismissal of the NCFCA claim.

The court granted dismissal of all claims against Hall and McDonald-Hall in their

official capacities. Additionally, the trial court denied Hall’s 12(b)(1) motion to

dismiss the NCFCA claim against him in his individual capacity.

 Appellants now seek interlocutory review, arguing that the trial court erred in

denying their motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). In addition,

Appellants have filed petitions for writs of certiorari seeking interlocutory review

regarding the sufficiency of the State’s pleadings under Rule 9 of the North Carolina

Rules of Civil Procedure. For the reasons set forth herein, we reverse the trial court’s

order denying dismissal for Kinston Charter, affirm the trial court’s order denying

dismissal for Hall, and deny Appellants’ petitions for certiorari.

 Scope of Review

 As an initial matter, we must address the scope of this Court’s jurisdiction over

Appellants’ interlocutory appeals.

 An order is either interlocutory or the final determination
 of the rights of the parties . . . . An appeal is interlocutory
 when noticed from an order entered during the pendency
 of an action, which does not dispose of the entire case and

 -5-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 where the trial court must take further action in order to
 finally determine the rights of all parties involved in the
 controversy.

Beroth Oil Co. v. N.C. Dep’t of Transp., 256 N.C. App. 401, 410, 808 S.E.2d 488, 496

(2017) (citations and quotation marks omitted).

 Ordinarily, an interlocutory order is not immediately appealable. Davis v.

Davis, 360 N.C. 518, 524, 631 S.E.2d 114, 119 (2006). However, a party may seek

immediate appellate review when an interlocutory order affects a substantial right.

N.C. Gen. Stat. §§ 1-277(a), 7A-27(b)(3)(a) (2017). “[T]he appellant has the burden of

showing this Court that the order deprives the appellant of a substantial right which

would be jeopardized absent review prior to a final determination on the merits.”

Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254

(1994).

 An appeal from an interlocutory order raising issues of sovereign immunity

affects a substantial right sufficient to warrant immediate review. Hinson v. City of

Greensboro, 232 N.C. App. 204, 209, 753 S.E.2d 822, 826 (2014). “However, this only

applies for denial of a motion to dismiss under Rules 12(b)(2), 12(b)(6), and 12(c), or

a motion for summary judgment under Rule 56. We cannot review a trial court’s

order denying a motion to dismiss under Rule 12(b)(1).” Id. at 209, 753 S.E.2d at 826

(citation and quotation marks omitted). Accordingly, only Appellants’ challenges to

 -6-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

the trial court’s denial of their motions to dismiss under Rule 12(b)(6) based on

sovereign immunity are properly before this Court.

 Standard of Review

 We review a trial court’s denial of a motion to dismiss under Rule 12(b)(6) de

novo. Wray v. City of Greensboro, 370 N.C. 41, 46, 802 S.E.2d 894, 898 (2017).

“Dismissal of an action under Rule 12(b)(6) is appropriate when the complaint fails

to state a claim upon which relief can be granted.” Id. at 46, 802 S.E.2d at 898

(purgandum). When ruling on a motion to dismiss, the well-pleaded material

allegations of the complaint are deemed admitted for purposes of the motion. Arnesen

v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 448, 781 S.E.2d 1, 7 (2015).

A complaint should only be dismissed where it affirmatively appears that the plaintiff

is not entitled to relief under any set of facts presented in support of the claim. Wray,

370 N.C. at 46, 802 S.E.2d at 898.

 Analysis

 Appellants contend that the trial court erred by denying their motions to

dismiss under Rule 12(b)(6) because they are entitled to immunity from liability, and

neither falls within the contemplated meaning of the term “person” under the

NCFCA. We agree that Kinston Charter is entitled to sovereign immunity, and it is

not a “person” subject to liability under the Act. However, while Hall qualifies as a

“person” under the NCFCA, the record is insufficient to determine, at this stage,

 -7-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

whether Hall is entitled to immunity in his individual capacity. Therefore, we affirm

in part and reverse in part.

 The North Carolina False Claims Act provides that any “person” who violates

the statute by making or presenting a false claim for payment to the State “shall be

liable to the State for three times the amount of damages that the State sustains

because of the act of that person.” N.C. Gen. Stat. § 1-607(a) (2017). The NCFCA was

enacted “to deter persons from knowingly causing or assisting in causing the State to

pay claims that are false or fraudulent and to provide remedies in the form of treble

damages and civil penalties when money is obtained from the State by reason of a

false or fraudulent claim.” N.C. Gen. Stat. § 1-605(b) (2017). However, the NCFCA

does not define the term “person.” See N.C. Gen. Stat. § 1-606 (2017).

 The NCFCA instructs that it should be interpreted consistently with the

federal False Claims Act (“FFCA”).3 N.C. Gen. Stat. § 1-616(c) (2017). Interpreting

the FFCA, the Supreme Court of the United States has stated that “the False Claims

Act does not subject a State (or state agency) to liability.” Vt. Agency of Nat. Res. v.

U.S. ex rel. Stevens, 529 U.S. 765, 787-88 (2000). In reaching this conclusion, the

Court applied the “longstanding interpretive presumption that ‘person’ does not

include the sovereign.” Id. at 780. According to the Court, this presumption can only

 3 Notably, the FFCA also fails to define the term “person.” See 31 U.S.C. § 3729(b) (2017).

 -8-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

be overcome by an “affirmative showing of statutory intent to the contrary.” Id. at

781.

 I. Liability for Kinston Charter under the NCFCA

 Kinston Charter argues that the trial court erred when it denied its motion to

dismiss under Rule 12(b)(6) because it is immune from liability under the NCFCA.

We agree with Kinston Charter that, as an extension of the sovereign, it is entitled

to exercise the State’s sovereign immunity. Moreover, the State has failed to make

any showing that the General Assembly intended to waive Kinston Charter’s

immunity so as to include public schools within the term “person” for purposes of the

NCFCA. Accordingly, we reverse the trial court’s denial of Kinston Charter’s motion

to dismiss.

 In North Carolina, “[e]ducation is a governmental function so fundamental in

this state that our constitution contains a separate article entitled ‘Education.’ ”

Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 10, 418 S.E.2d 648, 655

(1992). The North Carolina Constitution provides that “[t]he people have a right to

the privilege of education, and it is the duty of the State to guard and maintain that

right.” N.C. CONST. art. I, § 15. To that end, the State is required to provide “a

general and uniform system of free public schools.” N.C. CONST. art. IX, § 2(1). Under

our Constitution, the State Board of Education is tasked with supervising and

administering the free public school system. N.C. CONST. art. IX, § 5. Interpreting

 -9-
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

these provisions, our State Supreme Court has concluded “the State . . . is solely

responsible for guarding and preserving the right of every child in North Carolina to

receive a sound basic education.” Silver v. Halifax Cnty. Bd. of Comm’rs, 371 N.C.

855, 856, 821 S.E.2d 755, 756 (2018).

 Under Section 115C-238.29E of the North Carolina General Statutes, “[a]

charter school that is approved by the State shall be a public school within the local

school administrative unit in which it is located.” N.C. Gen. Stat. § 115C-238.29E(a)

(2013). By the plain meaning of the statute, charter schools are public schools.

 In North Carolina, public schools directly exercise the power of the State.

Bridges v. City of Charlotte, 221 N.C. 472, 478, 20 S.E.2d 825, 830 (1942). As our

Supreme Court has recognized,

 The public school system, including all its units, is under
 the exclusive control of the State, organized and
 established as its instrumentality in discharging an
 obligation which has always been considered direct,
 primary and inevitable. When functioning within this
 sphere, the units of the public school system do not exercise
 derived powers such as are given to a municipality for local
 government, so general as to require appropriate
 limitations on their exercise; they express the immediate
 power of the State, as its agencies for the performance of a
 special mandatory duty resting upon it under the
 Constitution, and under its direct delegation.

Id. at 478, 20 S.E.2d at 830.

 Charter schools, as public schools in the State of North Carolina, exercise the

power of the State and are an extension of the State itself. Therefore, as an extension

 - 10 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

of the sovereign, charter schools are entitled to exercise the State’s sovereign

immunity. This presumption of immunity may only be overcome by an affirmative

showing that the General Assembly intended to waive sovereign immunity for all

public schools so as to include them within the term “person” for purposes of the

NCFCA.

 Overcoming this presumption as it applies to our system of public schools

presents an especially difficult burden. North Carolina public schools perform a core

constitutional function of the highest order with the benefit of State appropriated

funds. As previously noted, a person who violates the NCFCA is liable for treble

damages. N.C. Gen. Stat. § 1-607(a). Moreover, where a private person brings a qui

tam action under the NCFCA, he or she is eligible to receive up to thirty percent of

the proceeds or settlement of the action to be paid out of the proceeds. N.C. Gen. Stat.

§ 1-610(e) (2017). Such a potential diversion of the State’s educational funding from

the public schools could detrimentally impact the ability of our schools to perform

their constitutionally mandated mission. Thus, we will not lightly impart on the

General Assembly an intent that goes beyond recapturing public school funding put

to a wrongful purpose but also creates potentially massive payouts for private persons

from funds originally earmarked for the benefit of our State’s schoolchildren.

 Here, the State has failed to make an affirmative showing that the General

Assembly intended to waive sovereign immunity for Kinston Charter so as to include

 - 11 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

public schools, and by extension charter schools, within the term “person” for

purposes of the NCFCA.

 The State argues that this Court should follow Wells v. One2One Learning

Found., 39 Cal. 4th 1164, 141 P.3d 225 (2006), a decision from the Supreme Court of

California, which concluded charter schools are not “persons” under the California

False Claims Act. Bearing in mind that we are required by Section 1-616(c) to

interpret the NCFCA consistently with the FFCA, we find the State’s reliance on the

California Supreme Court’s decision unpersuasive.

 In Wells, the Supreme Court of California held that California charter schools

are “persons” within the context of the California False Claims Act. Id. at 1164, 141

P.3d 225. The California Supreme Court emphatically stated that its analysis was

limited to the interpretation of California law. Id. at 1197, 141 P.3d at 241.

Importantly, California’s False Claims Act provides a definition for the term “person”

which includes “any natural person, corporation, firm, association, organization,

partnership, limited liability company, business, or trust.” Id. at 1187, 141 P.3d at

234. The Supreme Court of California concluded that its analysis was “not affected

by . . . United States Supreme Court decisions construing the federal false claims

statute” because those cases applied “federal principles of statutory construction that

differ from those used in [California]” to interpret a statute “distinct from its

California counterpart.” Id. at 1197, 141 P.3d at 241.

 - 12 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 Moreover, nothing in Wells indicates that the California Constitution, like the

North Carolina Constitution, imposes on the State itself, rather than its local

subdivisions, the responsibility to provide every child with a sound basic education.

In other words, under our State Constitution, every public school in North Carolina—

whether traditional or chartered—is the State. Thus, the California Court’s use of

California law to interpret a California statute is decidedly unhelpful to our analysis,

especially in light of the direction by the General Assembly to interpret the NCFCA

consistently with federal law. See N.C. Gen. Stat. § 1-616(c) (2017).

 Because Kinston Charter, as a public school, was engaged in a constitutionally

mandated function reserved to the State, we conclude Kinston Charter is entitled to

the State’s sovereign immunity. Moreover, the State has failed to carry its burden of

showing that the General Assembly intended to waive Kinston Charter’s immunity

so as to include it within the term “person” for purposes of the Act. Accordingly, the

trial court erred in denying Kinston Charter’s 12(b)(6) motion, and we reverse.

 Even assuming, arguendo, that charter schools are not categorically entitled

to claim sovereign immunity from the NCFCA, Kinston Charter would still not be

subject to suit under an arm-of-the-state analysis applicable to entities performing

State functions.

 Although charter schools are considered by North Carolina law to be public

schools engaged in a core governmental function mandated by our State Constitution,

 - 13 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

they are also required by statute to “be operated by a private nonprofit corporation.”

N.C. Gen. Stat. § 115C-238.29E(b) (2013). As previously noted, the Supreme Court

of the United States has indicated that the State and its agencies are presumptively

not “persons” under the FFCA. Vt. Agency of Nat. Res., 529 U.S. at 782. However, in

contrast, corporations “are presumptively covered by the term.” Id. at 782.

 In determining whether a corporation or other entity should be considered a

“person” for purposes of the FFCA, the Court has noted the “virtual coincidence of

scope” between this statutory inquiry and the constitutional inquiry for determining

sovereign immunity under the Eleventh Amendment. Id. at 779-80. As such, federal

courts employ the Eleventh Amendment arm-of-the-state analysis in determining

whether an entity is a “person” under the FFCA. See United States ex rel. Lesinski v.

S. Fla. Water Mgmt. Dist., 739 F.3d 598, 602 (11th Cir. 2014); United States ex rel.

Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 579-80 (4th Cir. 2012);

Stoner v. Santa Clara Cnty. Office of Educ., 502 F.3d 1116, 1121-22 (9th Cir. 2007);

United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702,

718 (10th Cir. 2006); United States ex rel. Adrian v. Regents of Univ. of Cal., 363 F.3d

398, 401-02 (5th Cir. 2004). If a corporation or other entity functions as an arm of

the state, then it is not a “person” for purposes of the FFCA and cannot be subject to

liability under the Act. Ky. Higher Educ., 681 F.3d at 580. The critical inquiry of this

 - 14 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

analysis is to determine whether the entity is “truly subject to sufficient state control

to render [it] a part of the state . . . and not a ‘person.’ ” Id. at 579.

 The United States Court of Appeals for the Fourth Circuit has set forth a

nonexclusive, four-factor review to determine whether a corporation or other entity

is a “person” under the FFCA. Id. at 580. Under this analysis, courts must

determine:

 (1) whether any judgment against the entity as
 defendant will be paid by the State or whether any recovery
 by the entity as plaintiff will inure to the benefit of the
 State;

 (2) the degree of autonomy exercised by the entity,
 including such circumstances as who appoints the entity’s
 directors or officers, who funds the entity, and whether the
 State retains a veto over the entity’s actions;

 (3) whether the entity is involved with state concerns as
 distinct from non-state concerns, including local concerns;
 and

 (4) how the entity is treated under state law, such as
 whether the entity’s relationship with the State is
 sufficiently close to make the entity an arm of the State.

Id. at 580 (purgandum). Although no single factor is determinative, the Supreme

Court of the United States has found the first factor to be the most significant

consideration of the arm-of-the-state analysis under the FFCA. Hess v. Port Auth.

Trans-Hudson Corp., 513 U.S. 30, 48 (1994). Importantly, whether a corporation or

 - 15 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

other entity is a “person” under the FFCA is a question of balance as opposed to one

of math. Pa. Higher Educ., 804 F.3d at 676.

 Here, under the arm-of-the-state inquiry, we must first look to whether the

State would likely be held responsible for any judgments obtained against Kinston

Charter. Ky. Higher Educ., 681 F.3d at 580.

 Charter schools are funded, at least in part, by taxpayer money flowing

through the State. These schools are expressly prohibited from raising private funds

by charging tuition fees. N.C. Gen. Stat. § 115C-238.29F(b) (2013). As a result, any

funds paid by a charter school in satisfaction of a judgment would almost certainly

require the use and depletion of State funds. However, the liability of both charter

schools and the State for civil judgments obtained against a charter school is limited

by statute. N.C. Gen. Stat. § 115C-218.20 (2017).

 Under Section 115C-218.20(a), the board of directors of a North Carolina

charter school must be required by their charter to obtain a reasonable amount of

liability insurance. N.C. Gen. Stat. § 115C-218.20(a). Moreover, under the statute,

“[a]ny sovereign immunity of the charter school . . . is waived to the extent of

indemnification by insurance.” N.C. Gen. Stat. § 115C-218.20(a) (emphasis added).

Section 115C-218.20(b) goes on to instruct that “[n]o civil liability shall attach to the

State Board of Education, the Superintendent of Public Instruction, or to any of their

 - 16 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

members or employees, individually or collectively, for any acts or omissions of the

charter school.” N.C. Gen. Stat. § 115C-218.20(b).

 “It is a well settled principle of statutory construction that words of a statute

are not to be deemed merely redundant if they can reasonably be construed so as to

add something to the statute which is in harmony with its purpose.” In re Watson,

273 N.C. 629, 634, 161 S.E.2d 1, 7 (1968). When possible, our courts must construe

the separate parts or sections of a statute as a cohesive and connected whole, thereby

giving effect to the intention of the General Assembly. Jones v. Bd. of Educ., 185 N.C.

303, 307, 117 S.E. 37, 39 (1923).

 Reading Section 115C-218.20(b) alone, the State argues that the first factor of

the arm-of-the-state analysis weighs against Kinston Charter because the State is

not responsible for civil judgments against the charter school. However, this

argument ignores the legislative intent of Section 115C-218.20 by only giving effect

to subsection (b). When Section 115C-218.20 is read in its entirety, as a cohesive and

connected whole, it is apparent that the General Assembly intended to shield North

Carolina charter schools, the State Board of Education, and the Superintendent of

Public Instruction from civil liability absent waiver.

 As originally enacted in 1996, the section of the Charter Schools Act detailing

civil liability and insurance requirements for North Carolina charter schools made no

mention of charter school immunity from civil liability. See N.C. Gen. Stat. § 115C-

 - 17 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

238.29F(c) (Cum. Supp. 1996). Rather, the section only discussed waiver of immunity

by the State Board of Education to the extent of indemnification by insurance and

operation of the Torts Claims Act under specified circumstances. N.C. Gen. Stat.

§ 115C-238.29F(c)(2) (Cum. Supp. 1996).

 In 1997, the section was amended to include the language, “Any sovereign

immunity of the charter school, of the organization that operates the charter school,

or its members, officers, or directors, or of the employees of the charter school or the

organization that operates the charter school, is waived to the extent of

indemnification by insurance.” N.C. Gen. Stat. § 115C-238.29F(c)(1) (1997). The

General Assembly also deleted the language discussing waiver of immunity by the

State Board of Education. See N.C. Gen. Stat. § 115C-238.29F(c) (1997). Following

the amendment, Subsection (c)(2) read in its entirety, “No civil liability shall attach

to any chartering entity, to the State Board of Education, or to any of their members

or employees, individually or collectively, for any acts or omissions of the charter

school.” N.C. Gen. Stat. § 115C-238.29F(c)(2) (1997).

 Assuming that the 1997 amendment was intended by the General Assembly to

contribute to the operation of the statute, rather than serve as a mere redundancy,

Section 115C-238.29F(c)(1), as revised, was designed to acknowledge that North

Carolina charter schools enjoy the State’s sovereign immunity, but waived charter

school immunity to the extent of indemnification by insurance. This construction of

 - 18 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

the section permits subsections (a) and (b) of the modern-day Section 115C-218.20 to

be read as a cohesive and connected whole, thereby giving effect to the intention of

the General Assembly.

 Thus, while the State is correct that no liability for civil judgments obtained

against a charter school attaches directly to the State Board of Education or the

Superintendent of Public Instruction, it is similarly true that no liability attaches to

charter schools themselves, beyond the extent of indemnification by insurance,

absent waiver. N.C. Gen. Stat. § 115C-218.20; see also § 115C-218.105(b) (eliminating

State liability for charter school contractual indebtedness); Smith v. State, 289 N.C.

303, 320, 222 S.E.2d 412, 424 (1976) (explaining that exercise of the State’s sovereign

immunity is implicitly waived by entering into a valid contract).

 Turning to the second factor, we must examine the degree of autonomy

exercised by Kinston Charter. Ky. Higher Educ., 681 F.3d at 580.

 North Carolina charter schools are operated by private, nonprofit corporations.

N.C. Gen. Stat. § 115C-238.29E(b). Additionally, a charter school’s board of directors,

and not the State, is empowered to decide those matters “related to the operation of

the school, including budgeting, curriculum, and operating procedures.” N.C. Gen.

Stat. § 115C-238.29E(d).

 Charter schools are funded by the State Public School Fund and a per pupil

share of the local current expense fund. Sugar Creek Charter Sch., Inc. v. State, 214

 - 19 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

N.C. App. 1, 10-11, 712 S.E.2d 730, 736 (2011). The autonomy of charter schools in

North Carolina is limited by regulatory and reporting requirements mandated by the

General Assembly. A charter school is required to apply for a charter with the State

Board of Education, must seek approval of material revisions to its charter with the

Board, and must have its original board of directors approved by the Board. N.C.

Gen. Stat. §§ 115C-238.29B(a), 115C-238.29D(e). Charter schools are prohibited from

affiliating with religious institutions. N.C. Gen. Stat. § 115C-238.29F(b). Charter

schools must also abide by State-mandated health and safety standards, instructional

guidelines, and admission requirements. N.C. Gen. Stat. § 115C-238.29F(a), (d), (g).

Additionally, charter schools are required to meet certain educational proficiency

standards established by the State. N.C. Gen. Stat. § 115C-238.29F(d1). Charter

schools are also subjected to regular financial auditing requirements adopted by the

State Board of Education and must report audit results to the Board at least

annually. N.C. Gen. Stat. § 115C-238.29F(f).

 For failure to meet the conditions, standards, or procedures set forth in its

charter or those additional requirements set forth in Section 115C-238.29F, the State

Board of Education is empowered to “terminate, not renew, or seek applicants to

assume [a school’s] charter.” N.C. Gen. Stat. § 115C.238.29G(a) (2013). Accordingly,

a charter school’s autonomy only extends as far as its compliance with its Board-

approved charter and oversight by DPI.

 - 20 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 Under the third factor, we must decide whether Kinston Charter is involved

with state concerns as distinct from non-state or local concerns. Ky. Higher Educ.,

681 F.3d at 580. As previously noted, the Supreme Court of the United States has

deemed the first factor of this analysis to be most significant within the context of the

FFCA. Port Auth. Trans-Hudson Corp., 513 U.S. at 48. However, as it concerns

interpretation of the NCFCA, we are compelled by the educational mandate of our

State Constitution to attach special significance to this factor of the analysis.

 As discussed at length above, the North Carolina Constitution requires that

the “right to the privilege of education” be zealously guarded and maintained by the

State. N.C. CONST. art. I, § 15. The constitutional right to education culminates in

the State’s obligation to provide for “a general and uniform system of free public

schools.” N.C. CONST. art. IX, § 2. As our Supreme Court has explained, our

Constitution makes the State solely responsible for ensuring “the right of every child

in North Carolina to receive a sound basic education.” Silver, 371 N.C. at 856, 821

S.E.2d at 756.

 Finally, we must examine the relationship between Kinston Charter and the

State as established by state law. Ky. Higher Educ., 681 F.3d at 580.

 The General Assembly authorized the creation of charter schools to “provide

opportunities for teachers, parents, pupils, and community members” to further the

State’s constitutionally mandated educational mission. N.C. Gen. Stat. § 115C-

 - 21 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

238.39A(a). Under Section 115C-238.29E, “[a] charter school that is approved by the

State shall be a public school within the local school administrative unit in which it

is located.” N.C. Gen. Stat. § 115C-238.29E(a). As previously discussed, in North

Carolina, public schools directly exercise the power of the State. Bridges, 221 N.C. at

478, 20 S.E.2d at 830. As a unit of the public school system, charter schools are

“under the exclusive control of the State, organized and established as its

instrumentality in discharging an obligation which has always been considered

direct, primary and inevitable.” Id. at 478, 20 S.E.2d at 830. Moreover, when

functioning within this sphere, charter schools “do not exercise derived powers . . . so

general as to require appropriate limitations on their exercise; they express the

immediate power of the State.” Id. at 478, 20 S.E.2d at 830.

 Thus, even if we were not persuaded, as a matter of law, that charter schools

are categorically entitled to claim sovereign immunity from the NCFCA, after

considering and balancing all of the applicable factors of the arm-of-the-state inquiry,

and despite the presumption for inclusion of corporate entities under the Act, we

conclude that charter schools are not “persons” for purposes of the NCFCA.

Therefore, because the General Assembly has not waived Kinston Charter’s

entitlement to the State’s sovereign immunity under the NCFCA, the trial court erred

by denying Kinston Charter’s motion to dismiss under Rule 12(b)(6).

 II. Liability for Hall under the NCFCA

 - 22 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 Hall similarly argues that the trial court erred when it denied his motion to

dismiss under Rule 12(b)(6) because he is immune from liability under the NCFCA

in his individual capacity. Specifically, Hall contends that he should not be

considered a “person” for purposes of the Act because he is a public official and is

entitled to public official immunity. At this stage of the proceedings, viewing the

material allegations of the State’s complaint as admitted for purposes of the motion

to dismiss, we conclude that there is insufficient information in the record to

determine if he is entitled to public official immunity to defeat the State’s claim.

 As previously noted, when ruling on a motion to dismiss, the well-pleaded

material allegations of the complaint are deemed admitted for purposes of the motion.

Arnesen, 368 N.C. at 448, 781 S.E.2d at 7. A complaint should only be dismissed

where it affirmatively appears that the plaintiff is not entitled to relief under any set

of facts presented in support of its claim. Wray, 370 N.C. at 46, 802 S.E.2d at 898.

 In North Carolina, a public official may be entitled to assert immunity even as

to claims against the official in his individual capacity. Isenhour v. Hutto, 350 N.C.

601, 609-10, 517 S.E.2d 121, 127 (1999). Under the doctrine of public official

immunity, “a public official, engaged in the performance of governmental duties

involving the exercise of judgment and discretion, may not be held personally liable

for mere negligence in respect thereto.” Id. at 609, 517 S.E.2d at 127. “Negligence”

simply amounts to “the lack of reasonable care.” Bashford v. N.C. Licensing Bd. for

 - 23 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

Gen. Contr’rs, 107 N.C. App. 462, 466, 420 S.E.2d 466, 469 (1992). Our courts allow

for this immunity because “it would be difficult to find those who would accept public

office or engage in the administration of public affairs if they were to be held

personally liable for acts or omissions involved in the exercise of discretion and sound

judgment.” Miller v. Jones, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945).

 However, public official immunity is not limitless. A public official is liable for

actions taken while engaged in the performance of governmental duties if those

actions were corrupt, malicious, or outside the scope of his duties. Smith v. Hefner,

235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952). Additionally, public official immunity does

not extend to public employees. Miller, 224 N.C. at 787, 32 S.E.2d at 597. A public

employee can be held “individually liable for negligence in the performance of his

duties, notwithstanding the immunity of his employer.” Id. at 787, 32 S.E.2d at 597.

In distinguishing between a public official and public employee, “[o]ur courts have

recognized several basic distinctions . . . including: (1) a public office is a position

created by the constitution or statutes; (2) a public official exercises a portion of the

sovereign power; and (3) a public official exercises discretion, while public employees

perform ministerial duties.” Isenhour, 350 N.C. at 610, 517 S.E.2d at 127.

 While the doctrine of public official immunity protects a public official from

liability for acts of negligence, under the NCFCA, liability only attaches where a

person “knowingly” commits one of the acts listed under Section 1-607(a). N.C. Gen.

 - 24 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

Stat. § 1-607(a). “Knowledge” involves an awareness or understanding of the

surrounding circumstances. Knowledge, BLACK’S LAW DICTIONARY (8th ed. 2004). To

act “knowingly” requires more than the culpable carelessness inherent to mere

negligence. See Bashford, 107 N.C. App. at 466, 420 S.E.2d at 469.

 Here, the State alleged in the complaint that Hall knowingly made “false or

fraudulent statements in connection with receiving state funds” in violation of the

NCFCA. Therefore, at this early stage of the proceedings, viewing the material

allegations of the State’s complaint as admitted for purposes of Hall’s motion to

dismiss, Hall has not yet raised sufficient evidence of his entitlement to public official

immunity to defeat the State’s claim.

 This is not to say that a charter school official cannot enjoy immunity in his or

her individual capacity, nor that a charter school official cannot assert public official

immunity to defeat a claim brought under the NCFCA where the record indicates his

or her actions amount only to negligence. We merely conclude that, at the pleadings

stage, the record contains insufficient evidence to determine whether Hall is entitled

to assert public official immunity and, if so, whether Hall’s actions amounted only to

negligence. Thus, the trial court did not err by denying Hall’s motion to dismiss under

Rule 12(b)(6).

 III. Appellants’ Requests for Certiorari Review

 - 25 -
 STATE V. KINSTON CHARTER ACAD.

 Opinion of the Court

 Finally, Appellants seek certiorari review of the sufficiency of the State’s

pleadings under Rule 9 of the North Carolina Rules of Civil Procedure. Having

determined that Kinston Charter is immune from liability under the NCFCA and

that there is insufficient evidence in the record to determine whether Hall is entitled

to assert immunity, in our discretion, we decline to grant Appellants’ petitions for

writs of certiorari.

 Rule 21 of the North Carolina Rules of Appellate Procedure authorizes this

Court to issue a writ of certiorari: (1) when the right to prosecute an appeal has been

lost by failure to take timely action; (2) when no right of appeal from an interlocutory

order exists; or (3) to review a trial court’s ruling on a motion for appropriate relief.

N.C.R. App. P. 21(a)(1). However, given this Court’s general policy against piecemeal

appellate review, in our discretion, we decline to issue a writ of certiorari on

Appellants’ remaining claims. See Harbour Point Homeowners’ Ass’n v. DJF Enters.,

206 N.C. App. 152, 165, 697 S.E.2d 439, 448 (2010).

 Conclusion

 For the reasons set forth herein, we reverse the trial court’s order denying

dismissal for Kinston Charter, affirm the trial court’s order denying dismissal for

Hall, and decline Appellants’ petitions for writs of certiorari.

 AFFIRMED IN PART AND REVERSED IN PART.

 Judges STROUD and DIETZ concur.

 - 26 -