THE NORTH CAROLINA STATE BAR, PLAINTIFF-APPELLANT v. SCOTT BREWER AND KENNETH HONEYCUTT, ATTORNEYS, DEFENDANTS-APPELLEES

No. COA06-815

(Filed 15 May 2007)

**1. Attorneys— discipline—statute of limitations**

Disciplinary claims against two prosecutors for withholding information were correctly dismissed by the Disciplinary Hearing Commission based on statutes of limitations within the State Bar Rules. Although undesirable, the language of the rule in issue compelled an interpretation that leaves the State Bar unable to act after an aggrieved party learned of concealed misconduct but did not report it.

**2. Attorneys— State Bar Rules—adoption—publication in N.C. Reports required**

The felonious misconduct portion of State Bar Rule .0111(e) was not properly adopted where it was not published by the Supreme Court in the N.C. Reports, as required by N.C.G.S. § 84-21.

**3. Attorneys— Disciplinary Commission's order—claims sufficiently addressed**

An order by the Disciplinary Hearing Commission of the N.C. State Bar sufficiently determined allegations of miscon-

duct against two prosecutors for not providing information to a defendant.

## 4. Attorneys— misconduct—prosecutors alleged to be withholding evidence—MAR claims in which prosecutors not involved

The Disciplinary Hearing Commission of the N.C. State Bar correctly concluded that there was no basis for imposing ethical liability on prosecutors (accused of withholding evidence at trial) for a subsequent MAR proceeding at which they were not acting on behalf of the State.

Appeal by Plaintiff from memorandum and order entered 4 April 2006 by the Disciplinary Hearing Commission of the North Carolina State Bar. Heard in the Court of Appeals 8 February 2007.

*The North Carolina State Bar, by Interim Co-Counsel Katherine Jean and Deputy Counsel David R. Johnson, for Plaintiff-Appellant.*

*Maxwell, Freeman & Bowman, P.A., by James B. Maxwell, for Defendants-Appellees Scott Brewer and Kenneth Honeycutt; and Charles B. Brooks, II for Defendant-Appellee Kenneth Honeycutt.*

*Holly M. Bryan for N.C. Academy of Trial Lawyers, amicus curiae.*

McGEE, Judge.

The North Carolina State Bar (the State Bar) appeals a memorandum and order of the hearing committee of the Disciplinary Hearing Commission (the Commission) dismissing three claims against Scott Brewer (Brewer) and Kenneth Honeycutt (Honeycutt) (collectively Defendants). We affirm the Commission's order.

Some background facts are necessary to an understanding of the issues before us. On 22 January 1996, Jonathon Gregory Hoffman (Hoffman) was indicted for first-degree murder for the killing of Danny Cook (Cook) while committing a robbery with a dangerous weapon in Union County. At the time of Hoffman's prosecution, Honeycutt was the elected district attorney in Union County, and Brewer was an assistant district attorney who served as co-counsel in the prosecution of Hoffman's case. Prior to Hoffman's trial, Hoffman's cousin, Johnell Porter (Porter), contacted agents investigating Cook's

murder and indicated that "he could be of assistance to [the investigation] of Hoffman." In exchange, Porter sought assistance with the sentence he faced on a federal bank robbery charge. Porter revealed certain details to investigators about the robbery and murder of Cook. The investigators reported Porter's conversation to Honeycutt.

Honeycutt, Brewer, and a federal agent met with Porter in early October 1996, several weeks before Hoffman's trial was to begin. According to notes Honeycutt took at the meeting, Honeycutt advised Porter that if Porter testified fully, truthfully, and completely at the Hoffman trial, Honeycutt would agree to provide Porter's sentencing judge with a statement that Porter had offered "substantial assistance." On 17 October 1996, Porter agreed to testify against Hoffman and Honeycutt agreed to testify at Porter's federal sentencing hearing regarding Porter's "substantial assistance." The agreement on the federal bank charge was put into writing and signed by Honeycutt, Porter, and Porter's attorney. A copy was provided to Hoffman's attorney prior to the murder trial.

The State Bar contends that Honeycutt made additional promises to Porter to secure Porter's testimony. Specifically, the State Bar alleges that Honeycutt promised Porter: (1) immunity from state and federal prosecution on other alleged offenses, (2) assistance in obtaining payment from a South Carolina reward fund, (3) a decrease in Porter's federal sentence, and (4) assistance with a sentence for an additional charge against Porter in South Carolina. The State Bar contends that Brewer attended the 17 October 1996 meeting and that these additional promises were made by Honeycutt in Brewer's presence. The Assistant U.S. Attorney prosecuting Porter on the federal bank robbery charge sent a letter to Porter's attorney confirming that (1) Porter had been granted immunity from federal prosecution for all crimes that were committed by Porter before 7 November 1995, except homicide, and (2) that Honeycutt would testify at Porter's sentencing hearing as to Porter's "substantial assistance." According to the State Bar, a copy of this letter was not furnished to Hoffman's attorney. Defendants deny knowledge of any promises made to Porter outside those included in the written agreement signed by Honeycutt and provided to Hoffman's trial attorney.

At the start of Hoffman's trial, Honeycutt informed the trial court, in Brewer's presence, that the State had revealed all concessions made to Porter in exchange for Porter's testimony. During the State's case-in-chief, Porter testified that Hoffman confessed to robbing and murdering Cook. Porter also testified that several weeks before

Cook's murder, Hoffman had stated he wanted to "get" Cook because Cook had "disrespected" Hoffman. Porter testified the only concession he was granted in exchange for his testimony was Honeycutt's agreement to testify at Porter's federal sentencing hearing that Porter had provided the State with "substantial assistance." A jury convicted Hoffman of first-degree murder on 13 November 1996, and he was sentenced to death on 14 November 1996.

Hoffman's post-conviction attorneys filed a motion for appropriate relief (MAR) on 2 August 1999. The MAR alleged, *inter alia*, that Hoffman's trial attorney had not been advised that Porter had received federal immunity in exchange for his testimony. An amended MAR was filed on 6 December 2000, alleging that Porter was also promised assistance from the Assistant U.S. Attorney to have a South Carolina sentence run concurrently with Porter's federal sentence. An additional amendment to the MAR was filed on 13 February 2001, alleging that unbeknownst to Hoffman's trial attorney, Porter had also received immunity from the district attorney of Mecklenburg County. A third amendment was filed on 9 October 2003 alleging that Honeycutt and Brewer had presented false testimony and had failed to correct Porter's false testimony.

After reading a news article about the Hoffman trial, Don Jones (Jones), an investigator with the State Bar, opened a grievance file concerning Honeycutt on 3 November 2003. Jones opened a grievance file on Brewer on 18 December 2003.

Judge W. Erwin Spainhour conducted a hearing on Hoffman's MAR on 26 April 2004, and granted Hoffman a new trial on 30 April 2004 because Hoffman's trial attorney was unaware of the federal immunity granted to Porter. In his order, Judge Spainhour found as fact that neither Honeycutt nor Brewer knew of the grant of federal immunity.

The State Bar filed a complaint with the Commission on 30 August 2005 alleging that while prosecuting the case against Hoffman in 1996, Defendants violated various Rules of Professional Conduct (the Rules). In its first claim for relief, the State Bar alleged that Defendants violated several rules by, *inter alia*, knowingly failing to disclose all the terms of an immunity agreement between Porter and state and federal authorities. Alternatively, in its second claim for relief, the State Bar alleged that Defendants "deliberately avoided inquiry into whether Porter had received concessions from the federal government in exchange for his testimony against Hoffman," and

thereby violated Rule 7.3 and Rule 1.2(d). The State Bar's third claim for relief alleged that Defendants violated Rule 3.1 by continuing to oppose Hoffman's motion for appropriate relief after learning of the allegedly undisclosed immunity deal. The claim also alleged that Defendants violated Rule 8.4(d) by failing to concede, until April 2004, that Hoffman was entitled to a new trial.

Brewer filed an answer to the complaint, and a motion to dismiss each of the claims asserted by the State Bar on 24 October 2005. Honeycutt also answered and moved to dismiss on 28 October 2005. Defendants contended, *inter alia*, that the first two claims asserted by the State Bar were barred by the time limitation provided in 27 N.C.A.C. 1B.0111(e) of the North Carolina State Bar Rules (State Bar Rule .0111(e)) and that the third claim for relief failed to state a claim.

Defendants' motions were heard before a hearing committee of the Commission on 5 January 2006 and 20 January 2006. In an order filed 4 April 2006, the Commission treated Defendants' motions to dismiss as motions for summary judgment and dismissed the first and second claims as time barred pursuant to State Bar Rule .0111(e). The Commission also granted Defendants' motions to dismiss the third claim for relief for failure to state a claim. The State Bar appeals.

I.

**[1]** The State Bar first argues the Commission erred by dismissing the first and second claims for relief pursuant to State Bar Rule .0111(e). We disagree. "Questions of statutory interpretation are questions of law, which are reviewed *de novo* by an appellate court." *In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 559, 589 S.E.2d 179, 180 (2003).

State Bar Rule .0111(e) provides

[g]rievances must be instituted by the filing of a written or oral grievance with the N.C. State Bar Grievance Committee or a District Bar Grievance Committee within six years from the accrual of the offense, provided that grievances alleging fraud by a lawyer or an offense the discovery of which has been prevented by concealment by the accused lawyer shall not be barred until six years from the accrual of the offense or one year after discovery of the offense by the aggrieved party or by the N.C. State Bar counsel, whichever is later. Notwithstanding the foregoing, grievances which allege felonious criminal misconduct may be filed with the Grievance Committee at any time.

This rule sets out three distinct limitations periods, based upon the nature of the grievance. Where the alleged grievance involves neither fraud nor concealment, nor felonious criminal misconduct, State Bar Rule .0111(e) creates a presumptive six-year limitations period from the accrual of the offense. Where a grievance alleges felonious criminal misconduct, State Bar Rule .0111(e) purportedly provides no time limitation. The first issue presented in this appeal concerns what time limitation State Bar Rule .0111(e) creates for grievances alleging fraud by an accused attorney or conduct concealed by an accused attorney. For the purposes of arguing their motions for dismissal, Defendants conceded that the grievances against them were properly categorized in the fraud or concealed conduct section of State Bar Rule .0111(e).

The State Bar initially argued before the Commission that an aggrieved party had six years from accrual, or one year from discovery, to file a grievance, whichever date was later, but that the State Bar had one year from discovery. The Commission rejected that argument. The State Bar then argued that State Bar Rule .0111(e) did not bar grievances involving fraud or concealment until the latest of: (1) six years from accrual, (2) one year from discovery by the aggrieved party, or (3) one year from discovery by the State Bar.

The State Bar, in its brief, argues that when a grievance alleges fraud or concealment by an accused attorney, the limitations period depends on whether the grievance is filed by an aggrieved party, or filed by the State Bar. According to this argument, where the grievance is filed by an aggrieved party, State Bar Rule .0111(e) requires the grievance to be filed (1) within six years after the misconduct or (2) within one year after discovery by the aggrieved party, whichever of those dates is later. However, if the grievance is filed by the State Bar, then the grievance must be filed (1) within six years after the misconduct or (2) within one year after discovery by the State Bar, whichever of those dates is later. If this reasoning is applied to the case before us, the grievances filed by the State Bar against Defendants were not barred by State Bar Rule .0111(e) because the grievances were filed within one year of discovery of the alleged misconduct by the State Bar.

In contrast, Defendants argue that the fraud or concealment portion of State Bar Rule .0111(e) creates two possible limitations periods for this type of grievance. Defendants argue a grievance must be filed by the later of (1) six years after the alleged misconduct, or (2) one year after discovery by either an aggrieved party or the State Bar.

Under this interpretation, discovery by either the aggrieved party *or* by the State Bar starts the running of the one-year limitation. A necessary corollary of this interpretation is that if the misconduct is discovered by an aggrieved party and the State Bar does not learn of the misconduct within one year of the aggrieved party's discovery, then the State Bar is precluded from filing a grievance.

The Commission agreed with Defendants' interpretation of State Bar Rule .0111(e). Specifically, the Commission found that State Bar Rule .0111(e) was ambiguous, and that the rule

> should be interpreted to mean that for grievances where the discovery provision applies, the limitations period expires upon the later of six years from the accrual of the offense or one year from the discovery of the offense by either the aggrieved party or the State Bar counsel.

The Commission also concluded that:

> There is no "legislative history" relating to the enactment of [State Bar] Rule .0111(e) reflecting the intent of the State Bar. As noted in the State Bar's supplemental memorandum, prior to the adoption of [State Bar] Rule .0111(e) in 1994 there was no time limit for the filing of a grievance. It is reasonable to assume that the State Bar adopted a limitations rule for the same purpose the legislature has enacted statutes of limitations—"to afford security against stale claims." *Trexler v. Pollock*, 135 N.C. App. 601, 607, 522 S.E.2d 84, 88 (1999), *[cert.] denied*, 351 N.C. 480, 543 S.E.2d 510 (2000).

The Commission found that the State Bar did not intend the time limitation to be less than six years. If the Commission had applied "whichever is later" to "one year after discovery of the offense by the aggrieved party or by the North Carolina State Bar Counsel[,]" then where both the aggrieved party and the State Bar discover the alleged misconduct less than five years from accrual, the time limitation would be shortened from the six years. Further, if the Commission had accepted the State Bar's second argument, then it would have to substitute "whichever is latest" for the language which actually appears in State Bar Rule .0111(e), "whichever is later." Therefore, as applied to the present case, the Commission concluded that the limitations period expired on 12 November 2002, six years after the conclusion of Hoffman's trial, thereby barring as untimely the grievances filed against Defendants.

"Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning." *Armstrong v. N.C. State Bd. of Dental Exam'rs*, 129 N.C. App. 153, 156, 499 S.E.2d 462, 466, *disc. review denied*, 348 N.C. 692, 511 S.E.2d 643 (1998), *cert. denied*, 525 U.S. 1103, 142 L. Ed. 2d 770 (1999). However, "where [a] statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent." *Frye Reg'l Med. Ctr. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999). Additionally, " '[a]lthough the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding.' " *Bashford v. N.C. Licensing Bd. for General Contractors*, 107 N.C. App. 462, 465, 420 S.E.2d 466, 468 (1992) (quoting *Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981)). Our Supreme Court has also stated that

> it is ultimately the duty of the courts to construe administrative statutes and they may not defer that responsibility to the agency charged with administering those statutes. While the interpretation of the agency responsible for their administration may be helpful and entitled to great consideration when the Court is called upon to construe the statutes, that interpretation is not controlling. It is the Court and not the agency that is the final interpreter of legislation.

*State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 211-12, 306 S.E.2d 435, 444-45 (1983) (citations omitted).

Although the State Bar contends in its brief that the Commission erred by concluding that State Bar Rule .0111(e) is ambiguous, we agree with the Commission and find the rule to be "ambiguous or unclear as to its meaning[.]" *Frye*, 350 N.C. at 45, 510 S.E.2d at 163. Further, we agree with the Commission's conclusion that "the intent of the discovery provision of [State Bar] Rule .0111(e) was to extend under certain circumstances the six-year limitations period, but in no event to shorten it." The first sentence of the rule establishes six years as the presumptive time limitation. We do not believe the intent was to shorten that time where the alleged offense involves fraud or concealment, allegations of a very serious nature. Neither can we ignore the words chosen by the drafters, "whichever is later[,]" which reference two events, not three. Accordingly, we agree with the Commission's interpretation of State Bar Rule .0111(e).

The State Bar urges our Court to consider that the Commission's interpretation will leave the State Bar unable to act if an aggrieved party learns of concealed misconduct by an attorney but does not report it to the State Bar. We are cognizant of this undesirable consequence, but we cannot read the statute as the State Bar urges based upon this consideration. Further, we note that State Bar Rule .0111(e) is subject to amendment with this consideration in mind. As the Commission noted, we are aware of the harsh outcome which results from the Commission's interpretation of State Bar Rule .0111(e). We do not take lightly allegations of such serious professional misconduct, but the language of State Bar Rule .0111(e) compels the above legal conclusions.

II.

**[2]** The State Bar next argues that the Commission erred in its conclusion that the provision for grievances alleging felonious criminal misconduct was not validly enacted. We disagree.

The final sentence of State Bar Rule .0111(e) reads "[n]otwithstanding the foregoing, grievances which allege felonious criminal misconduct may be filed with the Grievance Committee at any time." The Commission concluded that this sentence of State Bar Rule .0111(e) "was never properly enacted according to the dictates of N.C.G.S. § 84-21, the enabling statute governing the State Bar's rulemaking authority." Accordingly, the State Bar could not rely upon this portion of State Bar Rule .0111(e) to avoid dismissal of its claims for relief.

N.C. Gen. Stat. § 84-21 (2005) governs rulemaking procedures applicable to the State Bar, and provides, in part, that

[c]opies of all rules and regulations and of all amendments adopted by the Council shall be certified to the Chief Justice of the Supreme Court of North Carolina, entered by the North Carolina Supreme Court upon its minutes, and published in the next ensuing number of the North Carolina Reports and in the North Carolina Administrative Code[.]

The State Bar concedes that the amendment adding the felonious misconduct provision to State Bar Rule .0111(e) was not published in the North Carolina Reports, as required by the above statute, but argues that this omission was merely a clerical oversight by the Supreme Court, and not the fault of the State Bar. The State Bar argues that the failure to publish does not affect the validity of this sentence of

the rule, and the need for publication in the North Carolina Reports has been supplanted by the requirement for publication in the Administrative Code. However, N.C.G.S. § 84-21 unambiguously requires that a rule adopted by the State Bar be published in the North Carolina Reports, a requirement which was not met with regard to the felonious misconduct amendment.

The State Bar also argues that the North Carolina Administrative Procedures Act (APA) requires only "substantial compliance" with its rulemaking procedures for a rule to be valid. *See* N.C. Gen. Stat. § 150B-18 (2005). We note, however, that N.C.G.S. § 84-21 does not contain a provision permitting only substantial compliance with its requirements. Furthermore, in *Bring v. N.C. State Bar*, 348 N.C. 655, 660, 501 S.E.2d 907, 910 (1998), our Supreme Court held that the more specific directions of N.C.G.S. § 84-21 "must govern over the general rule-making provision of the APA." We, therefore, find this argument unpersuasive and affirm the Commission's conclusion that the felonious misconduct portion of State Bar Rule .0111(e) was not properly adopted.

### III.

**[3]** The State Bar argues that the Commission erred by dismissing the third claim for relief on the ground that it failed to state a claim for which relief could be granted. We disagree. Our review of dismissal of a claim pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005) is *de novo. Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005).

The State Bar's third claim for relief alleged that Defendants violated: (1) Rule 3.1 by continuing to oppose Hoffman's motion for appropriate relief after learning of the allegedly undisclosed immunity deal, and (2) Rule 8.4(d) by not conceding, until April 2004, that Hoffman was entitled to a new trial. The Commission concluded that the third claim for relief did not state a claim upon which relief could be granted and dismissed the claim with prejudice.

The State Bar argues that the Commission's order failed to address the State Bar's allegation that Defendants violated Rule. 8.4(d), and instead, dealt solely with the allegation that Defendants violated Rule 3.1. The rationale of this part of the Commission's order does indeed focus on Rule 3.1, but the Commission stated

> [t]he complaint must stand or fall on whether the State Bar can avoid the bar of its limitations rule for an alleged ethical vio-

lation that accrued no later than Hoffman's trial in November of 1996—not whether some new and distinct ethical duty devolved upon [] Defendants when the full extent of Porter's federal immunity deal came to light as a matter of public record by at least February of 2001.

We find that this language sufficiently determined the State Bar's allegations under Rule 3.1 and Rule 8.4(d), in that both alleged violations involved conduct which was alleged to have occurred after Hoffman's 1996 trial, conduct which the Commission clearly found to be insufficient to support the allegations.

**[4]** The State Bar also argues that the Commission's conclusion that the complaint did not state a claim for which relief could be granted for violations of Rules 3.1 and 8.4(d) was erroneous. Rule 3.1 provides in part that

[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

N.C. Rules of Professional Conduct, Rule 3.1. Rule 8.4(d) provides that an attorney commits professional misconduct by "engag[ing] in conduct that is prejudicial to the administration of justice[.]" N.C. Rules of Professional Conduct, Rule 8.4(d). In its third claim for relief, the conduct the State Bar alleged to be professional misconduct occurred at a time *when neither Honeycutt nor Brewer was acting on behalf of the State* in opposing Hoffman's MAR. At that time, the State was represented by the Office of the Attorney General. The Commission concluded that "[t]he real question [was] whether Rule 3.1 imposes vicarious ethical liability upon Brewer and Honeycutt for the State's conduct of the defense of the MAR proceedings." The Commission further concluded there was no basis for such a holding. We agree with the Commission's reasoning. Defendants could not controvert an issue in Hoffman's MAR case without a basis in law and fact, in violation of Rule 3.1; nor could Defendants engage in conduct prejudicial to the administration of justice in violation of Rule 8.4(d) in Hoffman's MAR proceedings.

Affirmed.

Judges CALABRIA and STEPHENS concur.