IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-53

No. COA21-118

Filed 1 February 2022

Guilford County, No. 19 CVS 1115

GUY M. TURNER INCORPORATED, Plaintiff,

v.

KLO ACQUISITION LLC, separately and doing business as KL Outdoor LLC, Defendant,

and

JPMORGAN CHASE BANK, N.A., Garnishee.

Appeal by garnishee from judgment entered 10 November 2020 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 17 November 2021.

> *Keziah Gates, LLP, by Andrew S. Lasine, for Plaintiff-Appellee.*

> *Womble Bond Dickinson (US) LLP, by Jonathon D. Townsend, for Garnishee-Appellant.*

CARPENTER, Judge.

¶ 1    Garnishee JPMorgan Chase Bank, N.A. ("Chase Bank") appeals from the trial court's entry of summary judgment (the "Order") in favor of Plaintiff Guy M. Turner Incorporated ("GMT") as to GMT's right to recover from Chase Bank as garnishee. After careful review, we reverse and remand the Order.

## I.    Factual & Procedural Background

In January 2019, GMT and Defendant KLO Acquisition, LLC ("KLO") [1] entered into a contract pursuant to which GMT would "provide labor, equipment, and materials to rig or remove KLO's manufacturing equipment from a KLO facility in Georgia, transport the equipment to KLO's vendor in Michigan for repairs, and then transport the equipment back to KLO's facility in Georgia and reinstall it in KLO's manufacturing line."  On 16 October 2019, GMT filed suit against KLO in Guilford County Superior Court for breach of contract and quantum meruit.  A few days later, on 29 October 2019, GMT served an order of attachment, summons to garnishee, and notice of levy on Chase Bank, with which KLO maintained two deposit accounts: the "Cash Collateral Account," and the "Operating Account" (together, the "Deposit Accounts").  Prior to the institution of GMT's suit, Chase Bank made substantial loans to KLO on which KLO defaulted, owing Chase Bank over twelve million dollars.  That same day, Chase Bank exercised its right of setoff against the funds in the garnished accounts and debited the entire balance of the Cash Collateral Account, a total of $328,243.14.  However, Chase Bank did not debit any funds from the garnished Operating Account and continued to allow KLO to actively draw upon the

---

[1] KLO is not a party to this appeal.

account after Chase Bank's receipt of the garnishment summons and notice of levy. By 28 February 2020, the Operating Account had a balance of $115,897.60, with significant activity by KLO during February 2020, including an opening balance of $8,357.73, deposits and credits of $1,163,724.90, and withdrawals and debits of $1,056,185.03.

¶ 3    On 12 October 2020, GMT moved for entry of default against KLO, which the clerk entered the same day. GMT also moved for summary judgment against KLO as the defendant in the contract action and against Chase Bank as garnishee.

¶ 4    GMT's motion for summary judgment came on for hearing on 2 November 2020 before the Honorable John O. Craig, III in Guilford County Superior Court. On 3 November 2020, Chase Bank moved for leave to amend its answer to the garnishment summons and notice of levy in order to assert that it had a perfected security interest in both of the Deposit Accounts.

¶ 5    On 10 November 2020, the trial court entered its summary judgment Order granting, *inter alia*, Chase Bank's motion for leave to amend its answer, GMT's motion for summary judgment as to GMT's right to recovery from Chase Bank pursuant to the garnishment summons and notice of levy, and GMT's motion for summary judgment as to its breach of contract claim against KLO. The trial court entered judgment against KLO in the amount of $168,712.59 plus interest and attorneys' fees, and it entered judgment against Chase Bank in the amount of

$209,614.47 to satisfy GMT's demand as of the date of issuance of the garnishment summons and notice of levy directed to Chase Bank. Chase Bank gave timely notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction to address Chase Bank's appeal from the order of summary judgment as a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2019).

## III.    Issues

The issues before this Court are whether: (1) Chase Bank waived or undermined its security interest by allowing KLO access to its deposit accounts held at Chase Bank, and (2) the trial court erred by granting summary judgment in favor of GMT and against Chase Bank.

## IV.    Standard of Review

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted) (emphasis added).

## V.    Order of Summary Judgment

On appeal, Chase Bank argues the trial court erred in granting summary

judgment for GMT because: (1) Chase Bank's perfected security interest in the Deposit Accounts shielded the funds from garnishment, and (2) Chase Bank did not waive or undermine its security interest by allowing KLO access to the Deposit Accounts. We agree.

## A. Security Interest

Chase Bank argues it had a perfected security interest in KLO's deposit account before 29 October 2019, the date on which the garnishment summons was served on Chase Bank, and interest superseded any interest held by GMT. GMT does not dispute Chase Bank had a security interest in the Deposit Accounts. For the reasons set forth below, we agree Chase Bank had a perfected security interest in KLO's Deposit Accounts.

Since the parties do not dispute Chase Bank had an enforceable security interest in KLO's Deposit Accounts, we need not consider whether Chase Bank's security interest attached. Therefore, we discuss perfection and priority of Chase Bank's security interest in the Deposit Accounts.

Section 25-9-304(a) of the North Carolina Uniform Commercial Code provides that "[t]he local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank." N.C. Gen. Stat. § 25-9-304(a) (2019). A bank and its

customer may dictate by agreement which jurisdiction's law will govern. N.C. Gen. Stat. § 25-9-304(b)(1).

¶ 13 Chase Bank argues that "[b]ecause [Chase Bank and KLO's Amended and Restated] Credit Agreement specifies that New York law governs, New York is the 'local law' for purposes of determining the perfection of Chase's security interest in the deposit accounts." GMT makes no argument with respect to which law governs perfection, the effect of perfection or nonperfection, nor the priority of Chase Bank's security interests in the Deposit Accounts maintained by Chase Bank. There is no other evidence in the record to indicate the law of a state other than New York governs. Because the Amended and Restated Credit Agreement (the "Agreement") between KLO and Chase Bank indicates that New York is the "bank's jurisdiction," we turn to New York law to determine whether Chase Bank has a perfected security interest in the Deposit Accounts and the priority of such interest.

¶ 14 Under New York's version of the Uniform Commercial Code, "a security interest in a deposit account may be perfected only by control . . . ." N.Y. U.C.C. Law § 9-312(b)(1) (McKinney 2021); *see* N.Y. U.C.C. Law § 9-314 (McKinney 2021). A secured party may exercise control over a deposit account as "the bank with which the deposit account is maintained . . . ." N.Y. U.C.C. Law § 9-104(a)(1) (McKinney 2021).

¶ 15        Here, Chase is a secured party with respect to KLO as evidenced by the Agreement, and Chase Bank exercised control over KLO's Deposit Accounts as "the bank with which the [Deposit Accounts are] maintained." *See* N.Y. U.C.C. Law § 9-104(a)(1). Thus, Chase Bank had a perfected security interest in KLO's Deposit Accounts pursuant to N.Y. U.C.C. Law § 9-312.

¶ 16        We next consider the priority dispute between Chase Bank and GMT with respect to the funds in KLO's Deposit Accounts. New York's Uniform Commercial Code provides: "[a] security interest held by a secured party having control of the deposit account under Section 9-104 has priority over a conflicting security interest held by a secured party that does not have control." N.Y. U.C.C. Law § 9-327(a) (McKinney 2021). Additionally, a lien creditor would only have superior rights over a secured party if the lien creditor acquired its lien before the security interest of the secured party was perfected. N.Y. U.C.C. Law § 9-317(a)(2)(A) (McKinney 2021). "A security interest in deposit accounts . . . is perfected by control under Section [9-104] when the secured party obtains control and remains perfected by control only while the secured party retains control." N.Y. U.C.C. Law § 9-314(b). Upon default, a secured party may enforce the obligations of an account debtor by "apply[ing] the balance of the deposit account to the obligation secured by the deposit account" if the secured party "holds a security interest in a deposit account perfected by control under Section 9-104(a)(1)." N.Y. U.C.C. Law § 9-607(a)(4) (McKinney 2021).

¶ 17        In addition, Chase Bank and KLO's Agreement expressly contemplated that

Chase Bank would have the right of setoff of mutual debts:

> SECTION 9.08. <u>Right of Setoff</u>. If an Event of Default shall
> have occurred and be continuing, each Lender and each of
> its Affiliates is hereby authorized at any time and from
> time to time, to the fullest extent permitted by law, to set
> off and apply any and all deposits (general or special, time
> or demand, provisional or final) . . . at any time held and
> other obligations at any time owing by such Lender or
> Affiliate to or for the credit or the account of any Loan
> Party against any of and all the due and payable Secured
> Obligations held by such Lender.  The applicable Lender
> shall notify the Borrower Representative and the
> Administrative Agent of such set-off or application,
> <u>provided</u> that any failure to give or any delay in giving such
> notice shall not affect the validity of any such set-off or
> application under this Section.  The rights of each Lender
> under this Section are in addition to other rights and
> remedies (including other rights of setoff) which such
> Lender may have.

¶ 18        In the instant case, it is undisputed that Chase Bank held a perfected security

interest in KLO's Deposit Accounts before it was served with the garnishment

summons and notice of levy by GMT.  There is no evidence to suggest Chase Bank's

control over the Deposit Accounts was not continuous.  *See* N.Y. U.C.C. Law § 9-

314(b).  Because GMT cannot show that it became a lien creditor before Chase Bank's

security interest was perfected, we conclude any claim of GMT with respect to the

Deposit Accounts is subordinate to Chase Bank's perfected security interest obtained

by control.  *See* N.Y. U.C.C. Law § 9-317(a)(2)(A).  Chase Bank, as a secured party

that holds a perfected security interest in the Deposit Accounts, is allowed to "apply the balance of the [D]eposit [A]ccount[s] to the obligation secured by the [D]eposit [A]ccount[s]." *See* N.Y. U.C.C. Law § 9-607(a)(4). Moreover, the express terms of the Agreement gave Chase Bank a right of setoff against KLO's deposits.

## B. Garnishment

¶ 19    We now determine the effect of Chase Bank's perfected security interest as it pertains to the rights that GMT obtained under North Carolina's garnishment statute. Chase Bank argues that under North Carolina law, the right of setoff asserted by Chase Bank "supersede[d] any interest accrued by GMT[,]" and therefore precluded GMT from "us[ing] the garnishment statute to force Chase [Bank] to surrender possession of the funds in the [D]eposit [A]ccounts." On the other hand, GMT contends it "stood in KLO's shoes and should have enjoyed the same right to the funds in the Operating Account as KLO." GMT further maintains that "[s]ince KLO accessed and used millions from the account over a period of months following service of the garnishment summons on Chase, GMT's garnishment summons attached to sufficient funds to satisfy GMT's claim because Chase never exercised its rights as secured creditor by exercising the right of setoff." We conclude Chase Bank asserted its right to setoff and asserted its security interest in the Deposit Accounts as statutorily allowed.

¶ 20        "Garnishment is not an independent action but is a proceeding ancillary to attachment and is the remedy for discovering and subjecting to attachment . . . [a]ny indebtedness to the defendant and any other intangible personal property belonging to him." N.C. Gen. Stat. § 1-440.21(a)(2) (2019).

¶ 21        N.C. Gen. Stat. § 1-440.28 provides in pertinent part:

> (f) [i]n answer to a summons to garnishee, a garnishee *may assert any right of setoff* which he may have with respect to the defendant in the principal action.
>
> (g) [w]ith respect to any property of the defendant which the garnishee has in his possession, a garnishee, in answer to a summons to garnishee, *may assert any lien or other valid claim amounting to an interest therein*. No garnishee shall be compelled to surrender the possession of any property of the defendant upon which the garnishee establishes a lien or other valid claim amount to an interest therein, which lien or interest attached or was acquired prior to service of the summons to garnishee, and such property only may be sold subject to the garnishee's lien or interest.

N.C. Gen. Stat. § 1-440.28(f)–(g) (2019) (emphasis added).

¶ 22        "Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning. However, where [a] statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent." *N.C. State Bar v. Brewer*, 183 N.C. App. 229, 236, 644 S.E.2d 573, 577, *disc. rev. denied*, 361 N.C. 695, 652 S.E.2d 649 (2007) (citations and internal quotation marks omitted).

We find the language of N.C. Gen. Stat. § 1-440.28 to be "clear"; hence, we do not need to go any further than giving the statute its plain meaning. *See N.C. State Bar*, 183 N.C. App. at 236, 644 S.E.2d at 577. In this case, Chase Bank answered GMT's garnishment summons and notice of levy addressed to it by stating, "JPMORGAN CHASE BANK NA HAS TAKEN THE RIGHT OF SETOFF. FUNDS NOT AVAILABLE." On 3 November 2020, Chase Bank moved to amend its answer in response to the garnishment summons and notice of levy to assert it had a perfected security interest in KLO's Deposit Accounts at Chase Bank prior to Chase Bank being served with the summons. In the trial court's 10 November 2020 summary judgment Order, it granted Chase Bank's motion for leave to amend its answer and granted GMT's motion for summary judgment in GMT's favor. Thus, Chase Bank both "assert[ed its] right of setoff" and "assert[ed a] lien or other valid claim amounting to an interest" in its answer and amended answer. *See* N.C. Gen. Stat. § 1-440.28(f)–(g).

**C. Exercise and Waiver of Right of Setoff**

In its next argument, Chase Bank contends it protected its interest in the Operating Account by claiming the right of setoff in answer to GMT's garnishment summons and notice of levy, and that it "did not waive or undermine its security interest by allowing KLO access" to the Operating Account after claiming its right of setoff. GMT argues Chase Bank's security interest does not defeat GMT's claim

where Chase Bank never enforced its security interest through setoff and allowed KLO to operate using the funds in its Operating Account. As discussed below, we hold Chase Bank neither waived its right to setoff nor undermined its security interest in the Deposit Accounts.

¶ 25        In the instant case, as the bank with which KLO maintained the Deposit Accounts, Chase Bank could have exercised its right of setoff against all of the funds in the Cash Collateral Account and the Operating Account, despite the garnishment. *See* N.C. Gen. Stat. § 1-440.28(f); *see also* N.Y. U.C.C. Law § 9-607(a)(4). As GMT concedes, Chase Bank promptly exercised its right of setoff regarding the Cash Collateral Account; after receiving GMT's garnishment summons and notice of levy on 29 October 2019, Chase Bank debited the entire Cash Collateral Account, acquiring $328,243.14 from the account on 6 November 2019 and notifying GMT of the setoff the same day.

¶ 26        The only evidence of Chase Bank's assertion of its right to setoff against the Operating Account is its statement, in response to GMT's garnishment summons and notice of levy, that "JPMORGAN CHASE BANK NA HAS TAKEN THE RIGHT TO SETOFF. FUNDS NOT AVAILABLE." In fact, the Operating Account statements reveal the funds in that account remained untouched by Chase Bank for months after it was served with GMT's garnishment summons and notice of levy, and the account had a balance of $115,897.60 on 28 February 2020.

¶ 27 Relying on this Court's decision in *Killette v. Raemell's Sewing Apparel* for support, Chase Bank nonetheless argues it did not waive its right of setoff by failing to take any action regarding the Operating Account. 93 N.C. App. 162, 377 S.E.2d 73 (1989). In *Killette*, this Court determined that a "waiver," in the context of the right of setoff against a garnished account, "is an intentional and permanent relinquishment of a known right that usually must be manifested in a clear and unequivocal manner." 93 N.C. App. at 164, 377 S.E.2d at 74 (citations omitted). The *Killette* Court concluded the garnishee-bank did not "waive its setoff right by honoring some of the company's checks after the note became due." *Id.* at 164, 377 S.E.2d at 74.

¶ 28 We acknowledge the facts of *Killette* are distinguishable from the instant case. Rather than "honoring some of the company's checks after the note became due[,]" *see id.* at 164, 377 S.E.2d at 74, here, Chase Bank did not exercise its right of setoff against the garnished Operating Account by debiting the account after KLO defaulted on its loan obligations and after Chase Bank's service with garnishment summons and notice of levy. Nevertheless, our Court's reasoning in *Killette* is similarly applicable to the case at bar. The North Carolina garnishment statute does not set out the time period by which Chase Bank was required to exercise its right to setoff. *But see Normand Josef Enters. v. Connecticut Nat'l Bank*, 230 Conn. 486, 507, 646 A.2d 1289, 1300 (1994) (holding a garnishee-bank failed to effectuate its right of setoff

within the applicable, statutorily set midnight deadline). To the contrary, Chase Bank as a garnishee was not "compelled to surrender the possession of any property of the defendant upon which [Chase Bank] establishe[d] a lien or other valid claim amounting to an interest" because Chase Bank established its perfected security interest in KLO's accounts held at Chase Bank in its amended answer. *See* N.C. Gen. Stat. § 1-440.28(g). The North Carolina garnishment statute and case law neither required Chase Bank to claim the full amount on deposit in KLO's Operating Account while the garnishment action was pending nor to act with respect to the Operating Account. Such actions would have surely been detrimental to KLO's ability to pay back its debts owed to its creditors, including Chase Bank and GMT. *See Killette*, N.C. App. at 164, 377 S.E.2d at 74–75. ("The law does not discourage leniency to one's debtors, and in our opinion the mere honoring of a depositor's checks after its note is due manifests only an intention by the bank to accommodate the depositor at that time; it does not indicate an intent to continue doing so in the future. If such indulgences were held to be a permanent waiver of the right of setoff it could only encourage banks to immediately offset their matured notes against the checking account balances of their depositor-debtors, a practice bound to embarrass if not ruin many hard pressed debtors."). Therefore, we conclude Chase Bank did not waive its right to setoff or undermine its perfected security interest in the Deposit Accounts. Other jurisdictions have also declined to find waiver of the right to setoff under

similar factual circumstances, based in part on the language of the respective garnishment statutes. *See Ladd v. Motor City Plastics Co.*, 303 Mich. App. 83, 102, 842 N.W.2d 388, 399 (2013) (declining to find waiver of right to setoff where the garnishee-bank properly "declare[d] the right to a setoff that it *would* have," although it was not required to "actually exercise that right" under the applicable garnishment statute); *Myers v. Christensen*, 278 Neb. 989, 996–97, 775 N.W.2d 201, 207 (2009) (holding a bank's perfected security interest in a debtor's deposit account was superior to that of a bankruptcy trustee's claim by garnishment, and the bank did not waive its security interest in the account by making a "calculated business decision to honor certain checks drawn" on the account). Accordingly, we hold the trial court erred in granting summary judgment as to GMT's right to recovery from Chase Bank pursuant to the garnishment summons and notice of levy. Therefore, we reverse and remand the Order.

## VI. Conclusion

Chase Bank had a perfected security interest in KLO's Deposit Accounts, which had priority over GMT's claim by garnishment to the account funds. Chase Bank asserted its right to setoff and asserted its security interest in KLO's bank account as allowed by the garnishment statute. The language of N.C. Gen. Stat. § 1-440.28 did not require Chase Bank to exercise its right to setoff; thus, Chase Bank did not waive its right to setoff or undermine its security interest in KLO's accounts

by allowing KLO to continue to use its Operating Account after receipt of the garnishment summons. Accordingly, we reverse the Order granting summary judgment in favor of garnishor GMT and remand the matter to the superior court for further proceedings if needed, and the entry of any necessary orders.

REVERSED AND REMANDED.

Judge GRIFFIN concurs.

Judge ZACHARY dissents by separate opinion.

ZACHARY, Judge, dissenting.

Chase Bank, the bank with which the judgment-debtor KLO maintained its accounts, could have exercised the right of setoff against both the Operating Account and the Cash Collateral Account, thereby insulating the Deposit Accounts from garnishment. Indeed, on 6 November 2019, Chase Bank responded in defense to GMT's garnishment summons and notice of levy regarding the Deposit Accounts that "JPMORGAN CHASE BANK NA HAS TAKEN THE RIGHT TO SETOFF. FUNDS NOT AVAILABLE." That same day, Chase Bank exercised its right of setoff against the funds in the garnished Cash Collateral Account, debiting the entire account, a total of $328,243.14. However, Chase Bank did not exercise its right of setoff against the funds in the garnished Operating Account, debiting no funds from that account. Instead, Chase Bank continued to allow KLO to actively draw upon the account for months, to the tune of millions of dollars, after Chase Bank's receipt of the garnishment summons and notice of levy.

The majority concludes that Chase Bank was not required, under N.C. Gen. Stat. § 1-440.28, to exercise its right to setoff after asserting its right to setoff against the Deposit Accounts. I respectfully disagree. By failing to take any affirmative action in furtherance of its right of setoff against the garnished Operating Account, Chase Bank waived its right to do so. Thus, under North Carolina law, Chase Bank rendered itself liable to GMT for the garnished amount. Accordingly, I would affirm the trial court's entry of summary judgment in favor of GMT, and I respectfully dissent.

## *Discussion*

### I.    *Security Interest and Garnishment*

Chase Bank asserts that its perfected security interest in the garnished Deposit Accounts "supersede[d] any interest accrued by GMT[,]" and therefore precluded GMT from "us[ing] the garnishment statute to force Chase [Bank] to surrender possession of the funds in the [D]eposit [A]ccounts."

Section 25-9-304(a) of the North Carolina Uniform Commercial Code ("UCC") provides that "[t]he local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank." N.C. Gen. Stat. § 25-9-304(a) (2019). Parties may dictate by agreement which jurisdiction's law will govern. *Id.* § 25-9-304(b)(1). Because the Amended and Restated Credit Agreement (the "Agreement") between KLO and Chase Bank specifies that New York law governs, New York law determines whether Chase Bank has a perfected security interest in the Deposit Accounts.

Under New York's version of the UCC, a secured party may exercise control over a deposit account as "the bank with which the deposit account is maintained[.]" N.Y. U.C.C. Law § 9-104(a)(1) (McKinney 2021). In addition, the parties' Agreement expressly contemplated that Chase Bank would have the right of setoff of mutual debts:

SECTION 9.08. <u>Right of Setoff</u>. If an Event of Default shall

> have occurred and be continuing, each Lender and each of its Affiliates is hereby authorized . . . to set off and apply any and all deposits (general or special, time or demand, provisional or final) . . . at any time held and other obligations at any time owing by such Lender or Affiliate to or for the credit or the account of any Loan Party against any of and all the due and payable Secured Obligations held by such Lender. The applicable Lender shall notify the Borrower Representative and the Administrative Agent of such set-off or application, <u>provided</u> that any failure to give or any delay in giving such notice shall not affect the validity of any such set-off or application under this Section. The rights of each Lender under this Section are in addition to other rights and remedies (including other rights of setoff) which such Lender may have.

¶ 35    Accordingly, after KLO defaulted on its loan obligations, by the express terms of the Agreement, Chase Bank could have applied the proceeds of both of the Deposit Accounts to KLO's loan obligations.

¶ 36    Chase Bank's security interest would have shielded the Deposit Accounts from garnishment under North Carolina law, had Chase Bank exercised its right of setoff.

¶ 37    "Garnishment is not an independent action but is a proceeding ancillary to attachment and is the remedy for discovering and subjecting to attachment . . . [a]ny indebtedness to the defendant and any other intangible personal property belonging to him." N.C. Gen. Stat. § 1-440.21(a)(2).

¶ 38    "In answer to a summons to garnishee, a garnishee may assert any right of setoff which he may have with respect to the defendant in the principal action." *Id.* § 1-440.28(f). "As debtors of their general depositors[,] banks have long had the right

to setoff against the deposits any matured debts the depositors owe them," including "the right to assert the setoff 'in answer to a summons to garnishee' . . . ." *Killette v. Raemell's Sewing Apparel*, 93 N.C. App. 162, 163–64, 377 S.E.2d 73, 74 (1989) (quoting N.C. Gen. Stat. § 1-440.28(f)).

¶ 39        A bank's right of setoff is a defense to a garnishment action in which it is served as garnishee. *See, e.g.*, *Moore v. Greenville Banking & Tr. Co.*, 173 N.C. 227, 231, 91 S.E. 793, 795 (1917) (holding that the garnishee-bank was "entitled to have its defense [of setoff] considered" in a garnishment proceeding). If, after service with a garnishment summons and notice of levy, a garnishee-bank does not exercise its right of setoff against a depositor's account, the trial court shall enter judgment against the garnishee-bank for the lesser of the following amounts: "(1) [a]n amount equal to the value of the property in question, or (2) [t]he full amount for which the plaintiff has prayed judgment against the defendant, together with such amount as in the opinion of the clerk will be sufficient to cover the plaintiff's costs." N.C. Gen. Stat. § 1-440.28(d)(1)–(2).

¶ 40        In the present case, Chase Bank plainly had the right of setoff against the garnished Deposit Accounts, as it claimed upon service with the garnishment summons and notice of levy. Indeed, its exercise of the right of setoff against the Cash Collateral Account after receiving GMT's garnishment summons and notice of levy was clearly appropriate. *See id.* § 1-440.28(f). However, Chase Bank's interest in the

Operating Account did not, in and of itself, secure the account from garnishment; rather, Chase Bank could protect its interest in the garnished Operating Account by exercising its right of setoff, as outlined in N.C. Gen. Stat. § 1-440.28(f).

II.       *Exercise and Waiver of Right of Setoff*

¶ 41      Chase Bank further contends that it protected its interest in the Operating Account by claiming the right of setoff in answer to GMT's garnishment summons and notice of levy, and that it "did not waive or undermine its security interest by allowing KLO access" to the Operating Account after claiming its right of setoff. I disagree, and would conclude that by failing to take any action in exercise of its right of setoff against the Operating Account, Chase Bank waived the right of setoff as to that garnished account.

¶ 42      As the bank with which KLO maintained the Deposit Accounts, Chase Bank could have exercised its right of setoff against all of the funds in the Cash Collateral Account and the Operating Account, despite the garnishment. *See id.* As GMT concedes, Chase Bank promptly exercised its right of setoff with regard to the Cash Collateral Account; after receiving GMT's garnishment summons and notice of levy on 22 October 2019, Chase Bank debited the entire Cash Collateral Account, acquiring $328,243.14 from the account on 6 November 2019 and notifying GMT of the setoff that day.

By contrast, the only evidence of Chase Bank's assertion of its right to setoff against the Operating Account is its statement, in response to GMT's garnishment summons and notice of levy, that "JPMORGAN CHASE BANK NA HAS TAKEN THE RIGHT TO SETOFF. FUNDS NOT AVAILABLE." In fact, the Operating Account statements reveal that the funds in that account remained untouched by Chase Bank for months after it was served with GMT's garnishment summons and notice of levy; by the end of February 2020, the Operating Account had a balance of $115,897.60, with significant activity by KLO during that month, including an opening balance of $8,357.73, deposits and credits of $1,163,724.90, and withdrawals and debits of $1,056,185.03.

Relying heavily on this Court's decision in *Killette* for support, Chase Bank nonetheless argues that it did not waive its right of setoff by failing to take any action regarding the Operating Account. In *Killette*, this Court determined that a "waiver," in the context of the right of setoff against a garnished account, "is an intentional and permanent relinquishment of a known right that usually must be manifested in a clear and unequivocal manner." 93 N.C. App. at 164, 377 S.E.2d at 74 (citation omitted). The *Killette* Court concluded that the garnishee-bank did not "waive its setoff right by honoring some of the company's checks after the note became due," reasoning that "the mere honoring of a depositor's checks after its note is due

manifests only an intention by the bank to accommodate the depositor at that time; it does not indicate an intent to continue doing so in the future." *Id.*

¶ 45      *Killette* presents a very different factual scenario than that at bar. Rather than "honoring some of the company's checks *after the note became due*[,]" *id.* (emphasis added), here, Chase Bank failed to exercise its right of setoff against the garnished Operating Account indefinitely, both after KLO defaulted on its loan obligations and *after Chase Bank's service with garnishment summons and notice of levy*. Despite Chase Bank's claim of the right of setoff against the Operating Account as a defense to the garnishment, Chase Bank permitted KLO to have access to millions of dollars passing through the Operating Account, while simultaneously taking no action in furtherance of its right of setoff.

¶ 46      The parties have not presented any reported North Carolina case law specifically on point in this regard; however, other jurisdictions have addressed the issue of waiver of the right of setoff against a garnished account. In *Normand Josef Enterprises, Inc. v. Connecticut National Bank*, the Connecticut Supreme Court concluded that "the act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right; (2) some action which accomplishes the setoff; and (3) some record which evidences that the right of setoff has been exercised." 646 A.2d 1289, 1299 (Conn. 1994) (citation omitted). The Court ultimately held that "as a matter of law, a bank effectuates its right of setoff only after it has performed some

binding overt act and has made a record to evidence that action." *Id.* Such an act "must be unequivocal, objectively ascertainable and final in order to be overt and binding." *Id.*

The Ohio Court of Appeals has explicitly delineated what a bank must do to avoid waiver of the right of setoff against a garnished account:

> [W]hen a garnishment action is pending, the bank must either release the amount on deposit to the garnishor or it must take the full amount on deposit (assuming that the full amount on deposit does not exceed the amount owed to the bank by the depositor) as setoff. *The failure to exercise setoff by claiming the full amount on deposit when a garnishment action is pending can be construed as waiver.*

*Maines Paper & Food Serv.-Midwest, Inc. v. Regal Foods, Inc.,* 654 N.E.2d 355, 359 (Ohio Ct. App. 1995) (emphasis added).

I find the reasoning of these courts persuasive and applicable to the present case: to avoid waiver of its right of setoff against a garnished account, a bank must take some overt action, beyond a mere assertion of the right of setoff in defense of garnishment, evidencing the actual exercise of the right of setoff against the garnished account.

In the present case, although Chase Bank may have made "the decision to exercise the right" of setoff against the garnished Operating Account, it cannot demonstrate that it took "some action which accomplishe[d] the setoff[.]" *Normand Josef*, 646 A.2d at 1299. Indeed, the Operating Account records establish that KLO

had uninterrupted control over the garnished account from October 2019 through February 2020. Chase Bank also failed to provide "some record which evidences that the right of setoff ha[d] been exercised[,]" as it admitted during discovery. *Id.*

¶ 50 Additionally, Chase Bank did not "release the amount on deposit [in the Operating Account] to the garnishor or . . . take the full amount on deposit[.]" *Maines Paper*, 654 N.E.2d at 359. Instead, Chase Bank allowed KLO unfettered access to the Operating Account and processed millions of dollars through the account. This stands in stark contrast to Chase Bank's handling of the Cash Collateral Account, from which Chase Bank debited *all* funds on the same day that it notified GMT that it had exercised the right of setoff. Chase Bank's "failure to exercise setoff by claiming the full amount on deposit when a garnishment action [wa]s pending[,]" therefore, "can be construed as waiver." *Id.*

¶ 51 Finally, Chase Bank's inaction with regard to the Operating Account meets the definition of "waiver" propounded by this Court in *Killette*: "an intentional and permanent relinquishment of a known right, . . . manifested in a clear and unequivocal manner." 93 N.C. App. at 164, 377 S.E.2d at 74 (citation omitted). Chase Bank was aware that it had the right of setoff in defense to the garnishment action; indeed, it claimed the right of setoff in its answer to GMT on 6 November 2019, and it exercised the right of setoff against the Cash Collateral Account that same day. Nonetheless, Chase Bank allowed KLO to continue to use and access the Operating

Account for months after claiming its right of setoff. During this period, KLO not only withdrew funds from the account on the date on which Chase Bank was served with GMT's garnishment process, but also subsequently deposited millions of dollars into that account. Chase Bank's inaction with regard to the Operating Account was manifestly inconsistent with its claimed setoff.

¶ 52 The act of setoff against a garnished account is not complete until some action is taken to accomplish the setoff. Absent any corresponding action, Chase Bank's mere claim of a setoff against the Operating Account was insufficient to support its claim and to defeat GMT's ability to recover through garnishment. In light of these facts, Chase Bank's failure to take any affirmative actions in furtherance of its right of setoff against the Operating Account in defense of garnishment was "an intentional and permanent relinquishment of a known right" that was "manifested in a clear and unequivocal manner." *Id.* Where Chase Bank allowed KLO continued access to and use of the funds in the Operating Account despite the garnishment, Chase Bank waived the right of setoff with regard to that account, and Chase Bank is therefore liable to GMT as garnishee.

¶ 53 For the reasons stated herein, I would affirm the trial court's entry of summary judgment in favor of GMT's right to recover from Chase Bank as garnishee. Accordingly, I respectfully dissent.